# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

RECEIVED USDC
CLERK, CHARLESTON, SC

2019 JAN 11  AM 8:49

MELODIE SHULER,
M.K.D,
M.T.S.D
       Plaintiffs,

vs.

**STATE OF SOUTH CAROLINA,**
Serve: Alan Wilson
1000 Assembly Street
Columbia, SC 29201

**ORANGEBURG COUNTY SHERIFF'S** )
**DEPARTMENT**
Serve: SHERIFF LEROY RAVENELL
1520 Ellis Avenue          )
Orangeburg, SC  29115      )

**SHERIFF LEROY RAVENELL**     )
In his individual and official capacity; )
**CAPTAIN ANTONIA TURKVANT**   )
In her individual and official capacity; )
**CHIEF KENNETH KINSEY**
In his individual and official capacity  )
**CAPTAIN LACREA JENKINS**     )
In his individual and official capacity  )
**LIEUTENANT COYLER**         )
In his individual and official capacity  )
**SERGEANT ALLEN HUNTER**     )
In his individual and official capacity
all of 1520 Ellis Avenue
Orangeburg, SC  29115         )

**ORANGEBURG COUNTY SHERIFF'S** )
**DEPUTIES; FRANKLIN ASHLEY**  )
**WILLIAMS, MICHAEL LAWRENCE,** )
**JOHN STUKE, DEREK HOWELL,**  )
**ANDRE BRISBON, CHRIS POWELL** )
in their individual and official capacities )
as a deputy sheriffs of Orangeburg   )

Civil Action No.:

**PLAINTIFFS' COMPLAINT**

**(Jury Trial Demanded)**

1

Sheriff's office                    )
all of 1520 Ellis Avenue            )
Orangeburg, SC 29115                )

**CARELENE JENKINS**
430 Caufield Court
Holly Hill, SC 29509

**CALVIN HALL**
1925 Puddledock Rd
Petersburg, VA 23803

1540 Ellis Avenue
Orangeburg, SC 29118

**LAQUETTA SUMPTER,**
**SAMUEL DAILY**
7324 Old State St
Holly Hill , SC 29059

**DERRICK DASH**
1540 Ellis Avenue
Orangeburg, SC 29059-2514

**DIANE GOODSTEIN, WINNIFA B. CLARK**
151 Docket Street
**Orangeburg** S.C., 29115

**SOUTH CAROLINA LAW ENFORCEMENT DIVISION**
4400 Broad River Road
Columbia, SC 29210

**OFFICER LAWRENCE WIGGINS**
4400 Broad River Road
Columbia, SC 29210

**NORTH CHARLESTON POLICE**
**DEPARTMENT**
2500 City Hall Ln
North Charleston, SC 29418

**CHIEF EDDIE DRIGGERS, SERGEANT RONALD**
**WEBB, OFFICER CLARENCE HABERSHAM,**
**JUSTIN INFINGER, OFFICER JUSTICE JENKINS,**
2500 City Hall Lane
North Charleston, SC 29418

2

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES**
Serve: Alan Wilson
1535 Confederate Ave
Columbia, SC 29201

**SYLVIA MITCHUM, TRACI ALTER MICHELE BLUE, GILLUM, ONE UNKNOWN INDIVIDUAL** making false reports to DSS
Defendants. and two six unknown DSS workers from child protective services)
In their individual and official capacity
3366 Rivers Avenue
North Charleston, SC 29405

**NOW COMES** the Plaintiffs, herein, requesting appointment of counsel due to indigency and complaining of the Defendants in their Complaint, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, who would respectfully allege, state, and show unto this Honorable Court as follows:

## STATEMENT OF SUBJECT MATTER JURISDICTION

1. This civil action is based upon the common law and statutes of the State of South Carolina, as well as the United States and South Carolina Constitutions and this Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and § 1988 and 28 U.S.C. §§ 1331 and 1441(c).

## STATEMENT OF PERSONAL JURISDICTION AND VENUE

2. This Court has personal jurisdiction over the Defendants as these Defendants are citizens, residents and/or engaged in state action while routinely and regularly conduct business and their public duties in the counties of Orangeburg County, Dorchester or Charleston, South Carolina.

3. Venue is proper in the Charleston Division in that the majority of the claims arise from actions committed in this Division.

## STATEMENT OF THE PARTIES

4. The Plaintiffs are citizens and residents of Charleston County, State of South Carolina, and, at all times relevant herein, was also citizens and residents of Orangeburg County, Dorchester County and Charleston County.

5. The Orangeburg Sheriff's Department, is a governmental agency of the County of Orangeburg, a political subdivision of the State of South Carolina.

6. The Defendants Sheriff Leroy Ravenell, Captain Antonia Turkvant, Chief Kenneth Kinsey, Captain Lacrea Jenkins, Lieutenant Coyler, Sergeant Hunter, at all times relevant herein, was

3

acting in their official capacities as employees of the Orangeburg County Police Department and in their individual capacities.

7. The SOUTH CAROLINA LAW ENFORCEMENT DIVISION is a governmental agency of the County of Orangeburg, a political subdivision of the State of South Carolina.

8. The OFFICER LAWRENCE WIGGINS of the South Carolina Law Enforcement Division is a governmental agency of the State of South Carolina.

9. The Defendant JUSTICE JENKINS is the School Resource Officer assigned to North Charleston Elementary School, and, at all times relevant herein, was acting in his official capacity as an employee of the North Charleston Police Department and in his individual capacity.

10. The Defendants Chief Eddie Driggers, Sergeant Ronald Webb, Officer Clarence Habersham, Justin Infinger, Officer Justice Jenkins, Sergeant Donte Ghi, Officer Ralph Draper, Officer Tiffany Nicole Hartnett, Officer Kristopher Kornahaus, One Unknown Officer – Office Doe And One Unknown Detective, at all times relevant herein, was acting in their official capacities as employees of the Orangeburg County Police Department and in their individual capacities.

11. The Defendant South Carolina Law Enforcement Division is a governmental agency of the State of South Carolina.

12. The Defendant South Carolina Department of Social Services is a governmental agency of the State of South Carolina.

13. The Defendant Sylvia Mitchum and, at all times relevant herein, was acting in her official capacity as an employee of the North Charleston Police Department and in  individual capacity. Charleston County Director of Department Social Services a governmental agency of the State of South Carolina.

14. ONE UNKNOWN INDIVIDUAL during the month of July and January of 2017 made a false reports to DSS stating that Ms. Shuler had a mental illness, was acting erratic and was not taking her medication.

15. The Defendant Charleston County Public Schools Charleston County Public Schools is a governmental agency of the State of South Carolina.

16. The Defendant Mary Reynolds was a principal at North Charleston Elementary School a governmental agency of the State of South Carolina.

17. The Defendant Charlotte Livingston was an employee at the Wings after-school program at North Charleston Elementary School.

4

### STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

18.     The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-17.

19.     The plaintiffs Melodie Shuler and the minor children problems started when they contacted the Orangeburg County Sheriff's Office to report domestic violence consisting of threats of violence and assaults.

20.      The Orangeburg Sheriff's Department response consisted of disrespect towards the plaintiff Melodie Shuler and the plaintiff children when she called to report domestic violence, threats of false arrest Melodie Shuler, and assaults upon Ms. Shuler and her minor children who were aged nine and 10 and seven and eight during all relevant times.  Also, the victim services employees were either unresponsive or stated that the plaintiff Ms. Shuler and her minor children should leave the residence due to domestic violence.

21.     Instead of arresting Ms. Shuler's spouse they disrespected Ms. Shuler and the plaintiff children.  The failure of the Orangeburg county police department to provide services to the plaintiff Ms. Shuler and the minor children disrupted their lives. In addition to failing to take any law enforcement action against the assailant further disruption occurred by Sheriff Deputy Franklin Ashley Williams telling the landlord, Carlene Jenkins to evict the plaintiff and her minor children without having legal justification whatsoever.  even though the court system lack jurisdiction continue to demand that Ms. Shuler travel to the state of South Carolina for proceedings, file and send papers to the state to defendant against the lack jurisdiction and have even made reports to the Department of Social Services Child Protection Services knowing full well that the allegations alleged lack merit and not even allegations that fit any definition of jurisdiction under state law.  The reports and criminal proceedings all without any factual merit, when read or heard by anyone would recognize that the very basis of the allegations of pushing a person down who is swing an axe at them and then "no making" sense is neither a crime or a basis to remove children from Ms. Shuler's custody. It is obvious that the immoral, corrupt, cowards who abuses their power and positions engaged in the acts to cover up the systemic civil rights occurring in their system, to crush Ms. Shuler financially while SLED and the North Charleston police attempted to assist Orangeburg Sheriff Deputies by numerous constitutional violations against Ms. Shuler.  On April 22, 2016, Officer Wiggins of the State Law Enforcement Division did come to Ms. Shuler's residence and as Ms. Shuler attempted to enter her vehicle alleged Ms. Shuler had a warrant and to come follow him while also stating that Ms. Shuler is a bad person by bothering a lot of people in the state of South Carolina.  Ms. Shuler refused and called Judge Dash whose legal assistance/administrative employee confirmed no warrant existed.  Ms. Shuler then drove away but was followed by who told hollered that Ms. Shuler should not drive because her license was suspended. On or about May 31, 2017, Officer

Habersham, Sergeant Webb, Justin Infinger, all officers of the North Charleston police department illegal evicted Ms. Shuler from another residence then someone notified Child Protective Services of the illegal eviction that Ms. Shuler was homeless with her children believing Ms. Shuler had no where to go but Ms. Shuler was able to get a new residence that very night by donation of strangers.

Ms. Shuler noticed she was being followed by Wiggins exited her vehicle and requested his purpose. Wiggins then followed Ms. Shuler for about fifteen minutes and as she reached her place of employment he then continued down the street. Ms. Shuler filed a complaint with SLED which has failed to respond to her complaint of Wiggins actions.

23.     Sheriff Deputy Franklin Ashley Williams threaten Melodie Shuler with false arrest if she called to report another incident of domestic violence on

24.     Derek Howell threaten Melodie Shuler with false arrest if she called to report another incident of domestic violence on

25.     Micheal Lawrence and John Stuke assaulted the plaintiffs Melodie Shuler and minor children on January 9, 2016.

26.     The plaintiff Ms. Shuler was falsely arrested by Orangeburg Deputy Sheriff's John Stuke and Micheal Lawrence on January 9, 2016. The false arrest resulted in the confinement of Melodie Shuler from January 8, 2016 to January 11, 2016.

27.     Carlene Jenkins, the landlord and her son Calvin Hall changed the locks to the residence on January 8, 2016 with the assistance of Orangeburg County Sheriff Deputy John Stuke. Carlene Jenkins also denied Ms. Shuler access to her property which resulted in Ms. Shuler losing her property. In October of 2016, Carlene Jenkins also destroyed property of plaintiffs and killed their two pet turtles. During the months of October and November Carlene Jenkins called the police department asserting that the plaintiff Ms. Shuler and M.T.S.D. committed violence against her.

28.     When Ms. Shuler requested documents in the criminal proceeding from the Clerk of the Court at the Magistrate Court in Holly Hill she was denied the documents resulting in her having to file a Writ of Mandamus to compel the documents. The Orangeburg Sheriff's Department denied Ms. Shuler access to vital documents and the 911 recording of the alleged assault resulting in Ms. Shuler being forced to remain in the State of South Carolina for a significant amount of time during the month of January 2016. The Judge during the bond hearing also ordered the plaintiff Melodie Shuler to reside in the state. Ms. Shuler had a job in the state of New Jersey and intended to move into a new residence on January 11, 2016. But due to the false criminal proceeding resulted in Ms. Shuler being forced to remained in the state of South Carolina from January of 2016 to January 2017. After Ms. Shuler was granted permission to leave the state she attempted to get vital documents and the 911 recorded and after a few days even without receipt of the documents her vehicle broke down causing her to be forced to remain

6

the state of South Carolina. These actions resulted in plaintiffs Melodie Shuler and the minor children becoming homeless and the plaintiff Melodie Shuler jobless when she was unable to return to work in New Jersey after her false arrest on January 9, 2016.

29.    The plaintiffs moved to North Charleston in March of 2016. Again instead of assisting Ms. Shuler and the minor children when they were victims of domestic violence and assault the North Charleston police department refused to take any law enforcement action against these assailants.  Yet the Officer listed Ms. Shuler as a suspect in one of the incidents she called 911 to report involving a neighbor and Ms. Shuler was constantly disrespected with disparaging remarks.

31.  North Charleston Police officers Sergeant Ronald Webb, Officer Clarence Habersham, Justin Infinger, illegally evicted Ms. Shuler from her place of residence on May 31, 2016 by stating that if she did not immediately leave she would be falsely arrested. Ms. Shuler left the residence.

32.    The State Law Enforcement Division denied Ms. Shuler security officer license without notice or due process of law based on the false arrest on January 9, 2016. When Ms. Shuler requested an appeal of the decision SLEDD refused to have communication with Ms. Shuler.

33.    The South Carolina Department of Social Services ("DSS") was court ordered to provide the plaintiffs assistance but DSS not only failed to provide services but its own employees constantly harassed Ms. Shuler and her minor children by making numerous visits to their homes and school without having an indication that abuse or the neglect of the children was occurring. The employees themselves made up false allegations that Ms. Shuler made was mentally ill, acting erratic and not taking her medication. Ms. Shuler does not have a mental illness and thus had no need to take medication. The same alleged allegation was repeatedly used to harass Ms. Shuler and the children from July of 2016 to January of 2017. DSS workers threaten Ms. Shuler with harassment if she left the state and then refused to close her public benefits in the state of South Carolina so she and her children could receive benefits in another state.

33.    Mary Reynolds and Charlotte Livingston both worked at North Charleston Elementary schools where the plaintiff children attended school. Both defendants harassed and assisted the North Charleston police department through Officer Justice Jenkins in harassing Ms. Shuler children and violating their constitutional rights.

## FIRST CAUSE OF ACTION
### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

34.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-33.

35.    Equal protection is applicable to discriminatory governmental action in administration and enforcement of law

36.     The plaintiff alleges that both Orangeburg Sheriff Department and Sheriff Leroy Ravenell, Captain Antonia Turkvant, Chief Kenneth Kinsey, Captain Lacrea Jenkins, Lieutenant
37.     Orangeburg County Sheriff's Deputies; Franklin Ashley Williams, Michael Lawrence, John Stuke, Derek Howell, And Andre Brisbon are liable for violating the plaintiffs rights to equal protection of the law and the state of South Carolina is also because they have policies, practices and customs of failing to enforce the law domestic abuse incidents and failed to enforce the law against assailants that committed crimes against the plaints but fully provided law enforcement services to persons abused by someone with whom the victim has no domestic relationship.

38.     The plaintiffs allege that the defendants use an administrative classification that manifests itself in discriminatory treatment violative of the equal protection clause when the defendants have consistently afforded lesser protection, plaintiffs allege, when the victim is (1) a woman abused or assaulted by a spouse or boyfriend, or (2) a child abused by a father or stepfather.

39.     The plaintiffs alleged that the police ignored the violence because Ms. Shuler was married to the perpetrator and he is their father. The plaintiffs were threatened not only repeatedly threaten with assault but they were actually assaulted in violation of South Carolina law. Over the course of eight months the police failed to afford the plaintiffs protection against such assaults and threats of assault, and failed to take action to arrest the perpetrator of these assaults. The plaintiffs have alleged that this failure to act was pursuant to a pattern or practice of affording inadequate protection, or no protection at all, to women who have complained of having been abused by their husbands or others with whom they have had close relations. The plaintiff alleges that such practice is tantamount to an administrative classification used to implement the law in a discriminatory fashion.

40.     Between early July 2015 and December of 2016, the plaintiffs, Melodie Shuler, a woman and her two minor children were living in the State of South Carolina, and the Orangeburg Sheriff's Office, Dorchester and Charleston Police Department and Government through the defendant police officers of the defendant counties of repeated threats upon her life and threats of assault and the assault upon their children in common committed by her husband, Melvin Delaney.   Derrick Howell told the plaintiff that if Ms. Shuler called to report her assaultive spouse again she would be falsely arrested for simply making the call.


41.     Attempts to file complaints by plaintiff Melodie Shuler against her husband in response to his threats of death and assaults upon her children were ignored or rejected by the named defendants and the state of South Carolina. An abbreviated chronology of the plaintiff's attempted and actual notifications of the threats made against her and actually made against their sons by her estranged husband to the defendant deputy sheriffs and police officers is appropriate for consideration of this motion.

42.     About two weeks earlier, on or about October 29, 2015 Sheriff Deputy Andre Brisbon responded to my call when my spouse, Melvin Delaney, hit me in the head with a T.V., hit me in the arm Officer Brison later listed Ms. Shuler as the suspect and Mr. Delaney as the victim and of failed to take any law enforcement action against Mr. Delaney.

43.     The defendants Orangeburg County Sheriff's Department, Dorchester County Sheriff's Department, and North Charleston Police Department denied the plaintiff and her children their constitutional rights when the deputies/police officers knowingly refrained from interference in

such violence, and also automatically declined to make an arrest simply because the assailant and his victims were married to each other and the children were his biological children.

44.     The Plaintiff alleges that the Government officials and deputies/police deputies were under an affirmative duty to preserve law and order, and to protect the personal safety of persons in the community. Yet failed to apply this duty equally to women and children whose personal safety was threatened by individuals with whom they have or have had a domestic relationship as well as to all other persons whose personal safety is threatened, including women not involved in domestic relationships. Further, although the officials had notice of the possibility of attacks on women in domestic relationships and children or other persons, they failed under an affirmative duty to take reasonable measures to protect the personal safety of such persons in the community.

45.     The plaintiffs alleged that the nonperformance or malperformance of official duties occurred during repeated police failure to take any law enforcements against when the plaintiffs made reports of domestic violence

46.     The plaintiff alleges the State of South Carolina, Orangeburg County, Dorchester County, North Charleston County, Orangeburg Sheriff's Department Sheriff's Department Dorchester Sheriff's Department and North Charleston Sheriff's Department has a policy or custom of condoning police misconduct that violates constitutional rights and alleges that the pattern of inaction caused the plaintiff compensable injury.

47.     During the period of time described herein, and for a long time prior thereto, the defendant The Orangeburg Count Sheriff's department acting through its Deputies, condoned a pattern or practice of affording inadequate protection, or no protection at all, to women who have complained of having been abused by their husbands or others with whom they have had close relations. Said pattern, custom or policy, well known to the individual defendants, was the basis on which they ignored said numerous complaints and reports of threats, actual assaults and   to the plaintiff with impunity.  The failed action as disgusting as it is not even the most egregious violation.

48.     The Deputies backed with the Sheriff, two Captains and several persons in supervisory levels first threaten the plaintiff with false arrest if she called to report crimes against her children again.  The plaintiff who sought the assistance of the victim service agency was denied transportation to the city when her only means of transportation her personal van was inoperable. First, the scheduled time was repeatedly change then after standing outside for more than an hour, with no call or explanation, on one date with her husband present inside the plaintiff just gave up.  The plaintiff unemployed, with no family or friends on the back of a dirt road in a town with no public transportation within over 40 miles had absolutely no means to travel to Orangeburg a 45 minute drive from her home.

49.     The case presently before us involves a claim that the Orangeburg County Sheriff's Department, Dorchester County Sheriff's Department, and North Charleston Police Department engaged in a custom, policy and practice of failing to respond to complaints made by females and children against males known to them.

50.     The plaintiff alleges that police officers treat domestic abuse cases differently than non-domestic abuse cases by failing to consider Ms. Shuler's complaint against her spouse as seriously as they would consider the complaint of a female against an unknown assailant.  The

9

plaintiff alleges that such inaction on the part of the deputies/officer is a denial of the equal protection of the laws. The deputies/police officer's denial of the plaintiff's rights under the equal protection of the law ultimately resulted in compensable damages to the plaintiff.

51.    The files a claim due to violations of due process and equal protection clauses, enforceable through Sec. 1983, to the Deputies and the Police Officers to provide women and children with the protection from domestic violence that not only police agencies are allegedly reluctant to give but the State itself.

52.    The county sheriff's omission to act could subjects him to liability under section 1983 because he violated duties imposed upon him by statute and regulations.

53.    The plaintiff argues that even if there is no written evidence of the allegations she asserts the actual actions that is alleged are unconstitutional because the Deputies and Police Officers implements and/or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers and/or is visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels.

54.    Specifically alleged in plaintiff statement of facts a series of acts and omissions on the part of the defendants took place over the course of seven months in Orangeburg County and five months in Charleston County.

55.    When the plaintiff moved to North Charleston the police department continuously refused to enforce a valid order of protection. On October 21, 2016, the plaintiffs were victims of assault but Officers Kevin Roshawn, Officer Ralph Draper and their supervisor Sergeant Donte Ghi refused to take any law enforcement action against them. On October 27, 2016, the North Charleston Police department were called about Phersophone Guillards assault and attempted assault upon the plaintiff Melodie Shuler Officer Tiffany Nicole Hartnett, Officer and Kristopher Kornahaus failed to take any law enforcement action against Guillard then listed Ms. Shuler as the victim. When Ms. Shuler went to get a copy of the police report she informed that she was not the victim so she had to pay five dollars for the copy of the police report. Ms. Shuler went to the North Charleston police department and spoke with supervisor Sergeant Donte Ghi, several supervisors about the failure of the officers to take law enforcement action with no avail about the crimes committed against herself and her children on October 21, 2016 and October 26, 2016.

56.    On February 16, 2016, Ms. Shuler filed an Order of Protection against Melvin Delaney. The Order of Protection was granted on February 17, 2016 in Dorchestor County.

57.    On May 4, 2016 the plaintiff Melodie Shuler reported that her spouse was harassing her and violating an order of protection. North Charleston police department refused to enforce a valid civil protection order against the Ms. Shuler Shuler's spouse when she called the department to report that her spouse was harassing her and impeding her from leaving the State.

58.    When the North Charleston police department officers arrived Officer Justice was very disrespectful and threaten to falsely arrest Ms. Shuler. Officer Jenkins failed to enforce her Order of Protection or even request the spouse to stay-way from Ms. Shuler.

59.    On or about October 12, 2016 the plaintiff Melodie Shuler reported that her spouse threaten to kill her and break her neck; violating an Order of Protection. North Charleston police department refused to enforce a valid civil protection order against Ms. Shuler's spouse when she called the department. When the North Charleston police department officers arrived one unknown officer was very disrespectful and threaten to falsely arrest Ms. Shuler. The Officer stated that Ms. Shuler should get a job and when Ms. Shuler stated that she had a job she was told to leave the residence with her children. The Officers left the residence and when Ms. Shuler followed up to see what law enforcement action the Officers intended to take Ms. Shuler found out none was taken and an incident report was not even written.

60.    Officer Justice Jenkins threaten to falsely arrest the plaintiff Ms. Shuler. During the months of November and December of 2016 Officer Justice Jenkins harassed and disrespected Ms. Shuler and her minor child, M.K.D. was derogatory, false statements and threats of false arrest on or about May 4th, 2016 and December 9, 2017 Officer Jenkins threaten to falsely arrest Ms. Shuler because he disagreed with her speech.

62.    Mary Reynolds the principal at North Charleston elementary schools and Charlotte Livingston an employee of the Wings after school program at North Charleston elementary during the month of October to December harassed Ms. Shuler and the minor children by allowing Officer Jenkins to harass them and threaten them with false arrest and assisted Officer Jenkins behavior by making false allegations against the plaintiffs or aggregating the conduct of the plaintiffs although the plaintiffs conduct was equally similar and less offensive than others children, parents, and Officer Jenkins and Charlotte Livingston herself. The aggregation was made to retaliate against Ms. Shuler for disagreed with her speech when she questioned the wrongful conduct of the defendants Officer Jenkins and Ms. Livingston.

63.    The Charleston County Department of Social Services was court ordered to provide Ms. Shuler and her children with supportive services in February of 2015. The South Carolina department of social services failed to provide those services to Ms. Shuler and the minor children and when Ms. Shuler complained about this failure the Department workers retaliated against her by making false statements asserting that Ms. Shuler was mental ill and not taking her medication as well as other false statements like Ms. Shuler moved to avoid contact with the Department.

64.    The employees from the Department of Social Services repeatedly came to Ms. Shuler's home and the children school asserting that reports were made but no reports of actual neglect or abuse of the children was made; it was the same report that Ms. Shuler allegedly had a mental health problem.

65.    When Ms. Shuler indicated that she intended to leave the state for employment the employees of DSS stated she could not and then when she stated that she would it was indicated that Ms. Shuler would be reported to other state.

11

66.    Ms. Shuler left the state and when she asked for cases involving public benefits to be closed the department of DSS workers refused interfering with Ms. Shuler and her children being able to get homeless services in the District of Columbia.

67.    When Ms. Shuler returned to the State of South Carolina Ms. Shuler notified Ms. Sylvia Mitchum providing an address and telephone number. During the month of January of 2017 it was known to government employee that Ms. Shuler was intending to leave the state for a better job and the children were to tour the state.

68.    The Department of Social Service failed to contact Ms. Shuler or visit the minor children at school from the months of September to January of 2017. It is clear that the attempt was to interfere with Ms. Shuler and the children ability to progress in life. Ms. Shuler was again harassed by the department about how she intended to provide for the kids when she left the state and questioned about her parenting and disciplining of the children despite no evidence whatsoever support that Ms. Shuler ever abused or neglected the minor children.

69.    When Officer Clarence Habersham, Justin Infinger and Sergeant Ronald Webb illegally evicted Ms. Shuler from her place of residence by stating that if she did not immediate leave she would be arrested on May 30, 2016.

70.    Officer Habersham also forced Ms. Shuler to sign a stay away notice from 5020 Rivers Avenue with the following special conditions: Never to Return by threaten to arrest her if she did not; Sergeant Webb was present when the threats of false arrest were made. Ms. Shuler paid for a full week of the hotel where she resided at but because the owner did not like Ms. Shuler the owner demanded that Ms. Shuler and her children be forced to leave the hotel. Chief Driggers and all supervisors were aware of the police officers conduct but did nothing at all to discipline the officers or remedy the incidents.

71.    The plaintiff alleges that all of the action done by the defendants in paragraphs 34 to 71 were also done on a discriminatory basis of the plaintiffs race which is African-American and specifically that Officer Justice Jenkins, Clarence Habersham and employees of the DSS violated her rights by alleging that she was an unfit mother based solely on racial stereotypes and not her actual parenting of her children.

## SECOND CAUSE OF ACTION
### FOURTH AMENDMENT VIOLATIONS

72.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-71.

73.    The plaintiff alleges that such specific omissions with the combination of the law enforcement authority with awareness of the consequences of a neglect of duty, held that the defendant deputies and police officers who ignored the duty imposed by his/her office and failed to stop. The officers are liable because the law does not insulate officers from liability when those officers could reasonably foresee the consequences of the neglect of their duty to enforce the laws.

12

74. Office John Stuke and Michael Lawrence arrested Ms. Shuler without a warrant after in violation of her fourth amendment entered a home in which she had a valid lease, after being told repeatedly while being filed to leave on at least three prior occasions. Officer Stuke left the home to speak with the alleged victim. Ms. Shuler locked the door and began to cook dinner for her children. Ms. Shuler just arrived from a 14 hour drive from New Jersey. The alleged victim, Carlene Jenkins and her daughter with down syndrome was visiting the home without Ms. Shuler being aware and changed the locks to the home a day prior with the assistance of Officer John Stuke the day or night prior. Officer Stuke with Michael Lawrence knocked on the door but Ms. Shuler continued to cook her food. The person with down syndrome without Ms. Shuler's consent opened the door for Officer Stuke. The alleged victim was not even a co-occupant but a landlord, which Office Stukes admitted during one of the illegal hearings that despite Ms. Shuler's repeated requests that he leave her home which she had a resident at that he did not because the alleged victim was the landlord. Officer Stuke and Lawrence clearly knew that they could not lawful enter Ms. Shuler's place of residence, which she had a valid lease, without her consent for alleging pushing down a victim who admitted she was attempting to hit Ms. Shuler with an axe and then was alleged pushed down and further no threaten or concern for the alleged victim existed because Officer Stuke and Lawurence were outside with the victim and could not even get in because the alleged victim did not have a key to get in at the time of the Stuke and Lawrence entered Ms. Shuler's residence to falsely arrest her. Ms. Shuler complained to the Orangeburg Sheriff's Office and spoke in person to Sheriff Ravenell, Captian Turkvant and contacted SLED, all person in charge of investigating the Sheriff's deputies actions refused to take any steps at all and all later even refused to provide Ms. Shuler was a copy of a letter acknowledging that her complaints were investigated and what the conclusions were.

75.    Officer Michael Lawrence is liable under section 1983 for failing to intervene when John Stuke assaulted and battered Ms. Shuler in the non-participating officers' presence.

Michael who failed to stop Officer John Stuke who assaulted and battered Ms. Shuler in his presence or otherwise within his knowledge was liable under section 1983.

76.    The Deputies and Police Officers ignored their duty and are liable especially when an unlawful act took place right in his presence.

77.    On May 30, 2016 without Ms. Shuler consent Officer Clarence Habersham entered Ms. Shuler residence without a warrant or permission.

## THRID CAUSE OF ACTION

## FIRST AMENDMENT VIOLATIONS DENIAL OF ACCESS TO PUBLIC DOCUMENTS AND RETAILATION BASED ON EXCERSICING FIRST AMENDRGHTS AS WELL AS FOIA CLAIMS

78.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-77.

79.    The defendant that state of South Carolina through its employee Judge Samuel Daily, Laquetta Sumter, Sheriff Leroy Ravanel and Captain Turkvant denied the plaintiff Melodie Shule civil court documents, 911 recordings and other governmental documents involving a false criminal prosecution which includes a copy of the criminal case, incident reports involving compliant filed by Ms. Shuler and those listing Ms. Shuler as a suspect, recordings of the jury striking, and a copy of summons for witnesses and subpoenas for documents although requested the FOIA mandates of disclosure were not followed although the documents were of records held by a "public body" and the documents did not fall within enumerated exemptions.

80.    The plaintiff, Melodie Shuler, alleges Judge Samuel Daily, Laquetta Sumter, Sheriff Leroy Ravanel and Captain Turkvant denied the plaintiff Sheriff Leroy RavEnell withholding of FOIA information by the doing the following as alleged in the Writ of Mandamus filed on March 10, 2016 in Orangeburg County:

1.)    On January 12, 2016, Judge Samuel Daily refused to provide the plaintiff with the name of the court to allow her to title the caption of the Rule 5 Discovery Request Motion. Judge Daily stated that the plaintiff needed an attorney to find out the name of the court. On or about January 13, 2016 clerk LaQuetta Sumpter again initially declined to identify the name of the court. When the plaintiff stated that she did not need an attorney and was entitled to know the name of the court that was prosecuting her Ms. Sumpter then stated that it was the Magistrate Court. The plaintiff was then able to write the caption of the case which she wrote as State of South Carolina Magistrate Court County of Orangeburg.

2.)    The plaintiff did not have a copy of any information provided during the bond hearing and was denied by the Magistrate office of copy of the information, which contained the caption of the case and information about her release status; which noted that she could not leave the state without permission.  It was stated that the Magistrate Office did not have a copy of the file. The plaintiff was informed that the Orangeburg Sheriff's Department had the file.

3.)    The plaintiff 's attempted to file a copy of the Rule 5 motion with the Magistrate's Office was rejected by the Magistrate's Court Office.  Ms. Shuler was informed to file the Motion for Discovery with the Orangeburg County Sheriff's Office.

4.)    On January 15, 2016, the plaintiff with persistence was able to file a Rule 5 Discovery Request with the Orangeburg County Sheriff's Office.  Ms. Shuler was provided with a stamp copy of the Rule 5 REQUEST FOR DISCOVERY received by fax which notes at the top 1/26/2016  15:01  8035335806 PAGE 01/32 in respond for a demand for discovery. (Attachment D)

PAGE 10/32 of the Discovery Response from OCDS RECORDS is a copy of the plaintiff's demand for discovery dated January 25, 2016 which demands: (Attachment E)

Demand for Discovery; specifically immediately needed to defend against false arrest incident report detailing the basis of false arrest: since it is entirely false without the false statements I cannot adequately defend myself against this unconstitutional proceeding/ persecution of a victim.  A Rule 5 request was made on 1/15/2016.

Please fax immediately the copy of the incident report so I can defend against the false persecution.

Reply: 188 Judge Street, Harleyville, SC  fax: 843-462-2082 (Attachment E)

5.)    On January 25, 2016, the plaintiff also sent a request for a copy of report number #00-15-008743 to the Records Division of the Orangeburg County Sheriff's Office in an addition to a FOIA Request for an incident report the defendant filed on or about October 28th or 29th as well as any reports in which "your office has in which I am alleged as a suspect and specifically what was written in my Rule 5 request was a copy of the incident report" of January 9, 20216 (Attachment G)

6.)    On January 25, 2016 the plaintiff also sent to Sheriff Leroy Ravenell a copy of the January 25, 2016 demand for discovery and FOIA request attempt to get his assistance in receiving the information. (Attachment F)

The plaintiff noted:

Re: Case No: 4102-P0075107 need discovery and specifically [the incident report immediately] (which immediately was circled) please have one of your employees fax incident report to 843-462-2082 (Attachment F)

7.)    In the request for assistance for discovery the plaintiff describes the discovery abuses she faced noting that on January 15, 2016 she spoke directly to Sheriff Leroy Ravenell in the hallway of the Orangeburg County Sheriff's Department about the misconduct of his Deputy Sheriff's and the denial of discovery. The plaintiff also noted that Deputy Stuke was in her house for over two hours without her permission, and that she and her children were assaulted by "your Deputy Sheriffs" and that "my children and I suffered at the hands of Melvin Delaney and Carlene Jenkins (who is currently abusing and neglecting her disabled child) but no police action was taken other than verbal and physical (abuse was omitted)..." The plaintiff noted that she repeatedly complained about "false reports written" and that she had "video tapes but this office persists." The plaintiff also notes, "After my arrest Jenkins threaten to burn my children while they slept and filed false report as she did on 11/11/2016 (correct date was on or about 11/11/2015). The plaintiff also notes, "Jenkins with coat came outside, not injured but known liar/senile. (Attachment F)

8.)    On January 28, 2016, the plaintiff filed an Emergency Motion Requesting a Shorten Response time to Discovery Request and Hearing to Set Deadlines; with the Rule 5 Discovery Request attached to the emergency motion. On January 29, 2016, the plaintiff called the Magistrate's Court office to ascertain whether or not a ruling was made on the emergency motion. The clerk LaQuetta Sumpter stated that Judge Daily would not be in until next week. When Judge Daily did return to the Court he stated that he would not rule on the Emergency Motion until February 10, 2016 at 9:30am; the same date of the scheduled trial date and thirty minutes before to schedule time. In the January 28, 2016 emergency motion the plaintiff noted that Jenkins by the "backing of the power of this state and as a criminal and violator of state laws as well as federal lead her to believe she does not have to follow laws. I needed this information to defend myself; false persecution." The plaintiff notes that the backing of the state occurred when "Deputy Officer Stuke ... assisted Jenkins in engaging in illegal self-help and encouraged her to violate my children and I rights and also encouraged Jenkins to assault my children, my

spouse and I by making sure it was understood" that the Orangeburg County Sheriff's Department ratified and would not condone her illegal conduct. (Attachment I)

9.)    On January 28, 2016 the defendant called the Magistrate's office and spoke with Judge Daily who stated that he did not grant possession to the landlord yet but the plaintiff could not have entry into the premise to obtain her children's' food, clothing and other property unless she paid $2400.00 to the landlord by around 4:00 pm that day.  The plaintiff was told to call the Orangeburg Sheriff's Department to assist with getting her property.  The plaintiff informed Judge Daily that she did not like the police and based on the criminal case which she did not want to go into she did not think it was a good idea to be around the police and did not want to get into the facts of the criminal case because Judge Daily was the judge of the case.  Judge Daily, on the speaker phone, while the plaintiff, her spouse and two minor children listened stated he was not the Judge of the case.

10.)    On or about January 29, 2016, the plaintiff requested a copy of the recordings of civil case no 2016-CV-38105 00022, the plaintiff's request was immediately denied.  The plaintiff was told to make a request to the court in writing.  On March 4, 2016 the plaintiff requested a copy of the recordings of the jury striking.  The Clerk of the Court LaQuetta Sumpter stated that the only way Ms. Shuler gets a copy of the jury striking recording was by request through Judge Daily.  The request for a transcript implicates the same first amendment rights that protect the public's access to the actual proceeding.

11.)    On January 29, 2016 during medical office visit for her minor children the plaintiff received a telephone call from Captain Turkvant who stated that she would not provide the defendant with a copy of the 911 call placed by the alleged victim of January 9, 2016.

12.)    On February 1, 2016, the next available business date after the misconduct of Captain Turkvant, the plaintiff filed a Motion to Dismiss or in the Alternative Motion to Sanction.  The plaintiff alleged that, "she demanded all discovery and was entitled to pursuant to Brady v. Maryland" which the Orangeburg Sheriff's Department was aware of her demand for the request when she made the Rule 5 request on January 15, 2016 and by fax to the Orangeburg Sheriff's Department on January 26, 2016 a Brady v. Maryland demand and again the department received the emergency motion as Captain Turkvant indicated that she would not provide the 911 recording at all and would not give the plaintiff any discovery beyond the 32 page fax sent which the defendant explained that she never requested the entire discovery request to be sent by fax; only the incident report and by doing so the defendant only received about 12 clear pages of discovery and the incident report was not clear.  The plaintiff requested Judge Daily to shorten the response time alleging that, "due to these constitutional violation she is unable to prepare a defense in violation her constitutional rights and thus request dismissal of the criminal case. (Attachment J)

13.)    On February 1, 2016, the plaintiff also filed with the Court a Motion for Bill of Particulars to order the prosecutor to provide the plaintiff with information she needed to defend herself in the case.  The defendant requested the prosecutor to be order to "specify how any of the alleged contact" given the fact that as a tenant pursuant to Title 27 - Property and Conveyance of the Residential Landlord and Tenant Act the defendant, according to Section 27-

40-210 had exclusive rights as a "tenant" under a rental agreement to occupy" the residence that the government admits Jenkins attempted to prevent entry to. The plaintiff also requested to be "fully informed" pursuant to due process rights of how and what evidence the government has in its hands to determine that when Jenkins attacked the plaintiff and her minor children and spouse with an axe the alleged contact asserted was unlawful. The plaintiff also demanded to "know what evidence supports that Jenkins as injured or could have been injured" by the defendant. (Attachment K)

14.)     On February 1, 2016 the plaintiff sent to the Orangeburg County Sheriff's Office a letter noting the Motions she filed on February 1, 2016 and again requested compliance with her Rule 5 requests and the names of several Orangeburg County Sheriff Office employees. The plaintiff notes that she included with the fax letter one hundred and one pages of documents she intended to use during her trial. (The plaintiff provided the same copies to prosecutor Deputy Sheriff John Stuke by hand in the Magistrate Court on February 10, 2016). The plaintiff also noted that she have numerous video recording and one of the alleged assault which was "shown on 1/14/2016 to Captain Turkvant and Sgt. Hunter. Youtube posting have other videos:" (Attachment L)

15.)     On February 1, 2016 when Ms. Shuler attempted to fax document to the Orangeburg Sheriff's office she was repeatedly provided different numbers and the number she previously sent discovery requests and motions to was "mysteriously" out of order: 803-515-1899 -- although this is the fax number listed on the Orangeburg County Sheriff's department letterhead. (Attachment M and Attachment N)

16.)     On February 1, 2016 the plaintiff was denied a copy of both the criminal and civil cases by both Judge Daily and clerk LaQuetta Sumpter. Clerk LeQuetta Sumpter stated that in order to receive a copy of the file she had to make a request for a copy of the file. The defendant filed a Request for Copy of file for civil case 2016 CV 38105 00022. The defendant was never provided a copy of the file or an order denying the request but was informed by Sumpter on or about February 11, 2016 that Judge Daily denied her request to receive a copy of the file.

17.)     Again on February 24, 2016, the defendant believing that Judge Daily had recused/disqualified himself from the case filed a Jury Trial Demand and another request for a copy of the criminal case and civil case #2016 CV 38105 00022 and also requested an order for discovery previously requested. The defendant never received a copy of an order in regards to her request for a copy of the files or an order for the discovery she requested. But did receive a notice for Jury Striking. (Attachment B)

18.)     The plaintiff also sent by fax a copy of the jury demand and request for an order to compel discovery to the prosecutor's department noting that she "further request the prosecutor to provide a copy of the alleged victims 911 call on 1/9/2016; any previous dates during October and November of 2015 in regards to the plaintiff and her minor children and all incident reports" filed by the plaintiff against the alleged victim and "any reports" filed by the alleged victim against the plaintiff and all discovery request made in Rule 5 request on 1/15/2016 and demanded again on 1/25/2016 and 1/26/2016. (Attachment B)

19.)    On February 1, 2016 the plaintiff filed a Motion for Subpoenas or Court Orders with the Magistrate's Court in order to summon witnesses and subpoenas for documents. (Attachment H) The plaintiff requested the court to issue subpoenas for John Stuke, Michael Lawrence, Leroy Ravenell, Franklin Ashley Williams and person with the following last names, CPL Williams, Capt. Turkvant, Sgt. Hunter and Brisbon all of the Orangeburg County Sheriff's Office and Calvin Hall (a son of the alleged victim). The defendant has not been provided with summons or subpoenas for documents.

20.)    On February 1, 2016 the plaintiff filed a Motion for Recusal requesting Judge Daily to disqualify himself from the criminal case.  The plaintiff noted that the reasons were "not specified as the matter was discussed previously with Judge Daily."  On January 28, 2016 the plaintiff also filed a Motion in Limine/Motion to Suppress and Request for a Hearing and a Motion to Dismiss and Motion to Determine Witness Competency to testify and Request for Hearing.  In Civil Case #2016 CV 38105 00022, the plaintiff filed a Motion for Reconsideration, Motion for this Case to be Transferred to a Court with Proper Jurisdiction or Recusal. (Attachment A)

21.)    On February 10, 2016, Judge Daily refused to recuse himself from the civil case first stating no motion was filed making such a request and after being informed that it is in the caption of the actual motion being argued before the court Judge Daily then declined to disqualify himself stating that he cannot disqualify himself from a case already decided.  Judge Daily refused to provide the defendant with a copy of the Motion as the plaintiff stated that she did not have a copy and later refused to provide a copy of the Motion or the actual court orders in the case.

22.)    The plaintiff was also denied for the fourth time a request for the criminal and civil file on March 3, 2016 and was denied a copy of the jury striking recording immediately when it was stated that the defendant had to file a request; requesting Judge Daily for permission to have a copy of the jury striking.  The plaintiff is requesting the recording to prepare for a Batson v. Watson challenge.

23.)    On March 3, 2016, the defendant filed a Motion again requested the court's intervention in the Orangeburg County Sheriff's Department refusal to provide discovery to the defendant. (Attachment O) The defendant notified that court that in attempting to obtain discovery from the Orangeburg County Sheriff's Department she was disrespected, insulted and threaten with false arrest by Sheriff Deputy Powell. The plaintiff asked the for the court's intervention because she feared for her safety and liberty in picking up the discovery material. The plaintiff was told on February 10, 2016 by Judge Daily that the only way to pick up the material was by going in person to the Orangeburg Sheriff's Department. On March 4, 2016 the plaintiff called the magistrate's office and was told by Sumpter that Judge Daily did not rule on the Motion yet. Sumpter was also asked by the defendant why Judge Daily was making decisions on the case after he stated he was going to recuse/disqualify himself? Sumpter stated that the court had to send a request for another Magistrate Judge to sit on the case and would not do so until the trial date.

24.)    On March 3, 2016, the defendant called Judge Dash, the chief Judge of the court and the court administration to and spoke with Terry Leverette. Judge Dash was unavailable and has not been reached as it was stated that he was out and was still unavailable on March 8, 2016. Terry Levertte requested the defendant to send a copy of the motions requesting the file and on March 8, 2016 indicated that Judge Daily was supposed to send the case to the nearest Magistrate Judge and to contact Judge Dash.

25.)    On March 21, 2016, Judge Dash stated while seated on the bench that the plaintiff's Writ of Mandamus was granted. Judge Dash stated that the plaintiff could not have a copy of the jury selection list. Judge Dash stated during the March 21, 2016 hearing that he did not believe that Ms. Shuler was an attorney licensed to practice law and earning over $150,000 (one and fifty thousand dollars a year) in January of 2016 before being falsely arrested which caused her to lose employment. Judge Dash then demanded the telephone number of Ms. Shuler's employer. Ms. Shuler provided Judge Dash with the telephone number. Judge Dash then, while seated on the bench called Ms. Shuler's employer. The voicemail picked up and Judge Dash failed to leave a voice message.

26.)    Judge Dash denied Ms. Shuler's Batson Challenge indicating that she did not have evidence and failed to present any documentation.

27.)    Judge Dash stated that the plaintiff should have been got a copy of the information she needed from the file as the higher court granted her Writ of Mandamus. Ms. Shuler after the hearing called the Orangeburg clerk's office. The Orangeburg clerk's office failed to return Ms. Shuler's call for more than a week. Ms. Shuler was informed that Judge Dash states were incorrect; no orders were issued in the case and the clerk stated that she was just filing the case – no written responses were made. Ms. Shuler informed Judge Dash on April 5, 2015 that no orders were issued by the higher court in regards to the Writ of Mandamus. Judge Dash became very belligerent on the telephone and stated that Ms. Shuler had no need to call Orangeburg, if he stated the order was granted than there was no need to call. Ms. Shuler stated that she does not believe what a person states and wanted a copy of the order. Judge Dash stated asked what for. Ms. Shuler stated that she was going to file a complaint with the federal court about what was going on. Judge Dash indicated that Ms. Shuler lied about being a federal prosecutor. Ms. Shuler stated that she never stated that. Judge Dash, disrespectfully persisted with the false assertions saying there are records. Ms. Shuler again stated that she never stated that she was a federal prosecutor but did state that she was licensed to practice law in the federal court of the District of Columbia which could be verified by going to the website. Ms. Shuler stated that both Judge Dash and Judge Daily were incompetent and should not be a position deciding someone's freedom or property. Judge Dash stated that he was going to call the police department and report Ms. Shuler for committing a crime. Ms. Shuler asked what crime she committed. Judge Dash stated, "telephone misuse." Ms. Shuler stated that she was not scared of Judge Dash or anyone of the rest of them. Judge Dash then hung up the telephone on Ms. Shuler

28.)    Judge Dash stated that someone was there to answer the telephone since 9:00 am and that Ms. Shuler did not call the Magistrate's Office. Ms. Shuler stated that cellphone have call id and record numbers called which is easily verifiable.

29.)    On April 6, 2016 Judge Dash persisted to harass the plaintiff by sending a show order for her absence in court knowing that Ms. Shuler did not intentionally miss the trial and did not have the financial ability to pay the fine. Judge Daily's notification also falsely assert that Ms. Shuler had to pay the fee in full or turn herself in. When the law is clear that an indigent person cannot

be incarcerated solely for the failure to pay a fine in lieu of incarceration; a payment plan is required. The notification omits this important notification.

## FOURTH CAUSE OF ACTION
### (Violation of Fourteenth Amendment Substantive and Procedural Due Process)

81. The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-80.

82. The plaintiffs argue that their procedural due process rights were first violated by the state of South Carolina when the when plaintiff Melodie Shuler went to the Court building in both Orangeburg and Dorchester County to seek an Order of Protection against her spouse for herself and the minor children but was harassed by the security guard at the front desk who told her, "good luck with that" and then when she requested the documents to fill out the clerk initially declined to give Ms. Shuler the paperwork to file an Order of Protection against her spouse.

83. In Orangeburg County, the clerk of the court told that plaintiff Melodie Shuler that she had to get an attorney in to file an Order of Protection.

84. In Dorchester County plaintiff Melodie Shuler was told that only the victim services individuals could give her a copy of the paper required to file an Order of Protection.

85. In both counties Ms. Shuler persisted and demanded the paperwork.

86. In Orangeburg plaintiff Melodie Shuler missed the hearing due to getting another job in another state but still asked for a continuance which was denied in July of 2015. In Dorchester County plaintiff Melodie Shuler was able to get the order in February of 2016.

87. After the plaintiffs Melodie Shuler and the minor children already left the residence and were living in a shelter, My Sister's House the Judge in Dorchester County during the hearing regarding the Order of Protection filed in February of 2016 called Department of Social Services.

88. The State Law Enforcement Division denied Ms. Shuler security officer license without notice or due process of law based on the false arrest on January 9, 2016. When Ms. Shuler requested an appeal of the decision SLEDD refused to have communication with Ms. Shuler.

89. The employees at the Department of Social Services were disrespectful and harassed Ms. Shuler stating that the judge called because she failed to protect the children from abuse. Yet, the only reason were plaintiffs Melodie Shuler and the minor children were temporarily staying at the same residence as the assailant was because when she returned to South Carolina from New Jersey to get her mail and property she was falsely arrested by the Orangeburg Sheriff Department.

90.    Deputy Sheriff John Stuke and Michael Lawrence. The arrest of the plaintiff Ms. Shuler resulted in server injuries to her gall bladder, head, shoulder, arms, and fingers and pain throughout my entire right side of her body.

91.    The plaintiff Ms. Shuler argues that during the Bail Proceedings the Magistrate Judge failed to use the Factors to Consider and Forms of Release.

92.    The plaintiff Ms. Shuler argues that Officer John Stuke and Micheal Lawrence failed to failed rules governing arrest of person without a warrant.

93.    Judge Samuel Daily and Clerk of the Court Laquetta Sumpter failed to provide the defendant refusal to provide the defendant with a copy of the criminal jacket, recordings of the jury striking, and provide the defendant with a copy of summons for witnesses and subpoenas for documents during pre-trial hearing and the trial dated April 5, 2016.

94.    Judge Samuel Daily failed to follow the correct procedures of disqualification as Judge Daily stated on January 12, 2016 that he was not qualified to decide the case. Yet proceeded over a civil case involving the same issues involving the criminal case and decided motions in the criminal case from January 12, 2016 until April 5, 2016 even after he granted the defendant's motion to disqualify on February 10, 2016. Judge Daily refusal to desist from deciding pre-trial motions resulting in the delay of the criminal trial against the plaintiff Melodie Shuler filed on January 9, 2016.

95.    Plaintiff Ms. Shuler's property interests during the false criminal proceeding were violated when the defendants failed to satisfy the all of the procedural requirements as follows as noted in her Appellate argument:

    1.) DID THE Magistrate Judge PROPERLY Determined That He Has Jurisdiction Over This Criminal Offense When The Defendant Was Arrested Without A Warrant, Issued A Uniform Traffic Ticket That Does Not Even Allege The Victim And Never Was There Statement Under Oath Of What The Alleged Crime Committed Was And Further The Incident Report Was Not Finalized Until After The Defendant's Bond Hearing And Was Not Legibly Provided To The Defendant Until March 10, 2016; Nearly Three Months After Her Discovery Requests Were Made Pursuant To Rule 5, Brady V. Maryland And Due Process.

    2.) DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' REQUEST FOR THE IMMEDIATE APPOINTMENT OF COUNSEL WHEN REQUESTED?

    3.) DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Motion To Dismiss Filed On January 28, 2016.

    4.) DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Motion To Dismiss When It Was Asserted That The Statement Of Charges/ Incident Report Did Not Meet The Element Of An Assault According To Statute.

5.) DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request For An Order To Determine The Sanity And Competency Of The Alleged Victim Ability To Testify; Specifically When Ms. Shuler Alleges Sufficient Facts To Establish Sanity And Competency Issues And Attached To The Motion Is A Message Written By The Alleged Victims Owns Son Noting That "She Is 75 She Has A Right To Be Delusional."

6.) DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request For A Shorten Response Time To Discovery Request And Request For A Hearing To Set Deadlines When The State Refused To Provide The Defendant With Discovery Timely Requested Through Rule 5 And Brady V. Maryland; Specifically A 911 Call Which Records By Sound The Alleged Assault, All Statements Made By The Alleged Victim Which Includes A Handwritten Statement Made On The Date Of The Alleged Assault And Other Incident Reports Made By And Listing The Defendant As A Suspect From Calls Placed At The Residence From July Of 2016 Until That Present Date.

7.) DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Motion For Subpoenas And Court Orders That The Defendant Requested On February 1, 2016; The Request Was Made To Have The Witnesses And Essential Documents Present During Her Court Hearing.

8.) DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request For A Bench Trial; Although The Defendant Requested A Trial By Jury The Defendant Requested To Waive A Jury Trial But The Request Was Denied Because The Trial Judge Stated That He Failed To Send The Case To Another Magistrate.

9.) DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Motions When The Trial Judge Already Indicated, Without Asserting A Basis On January 12, 2016, That He Wanted To Be Disqualified From The Case; Yet Failed To Send The Case Immediately To A New Magistrate.

10.) DID THE TRIAL COURT Violate The Defendant's Right To A Speedy Trial And Other Constitutional And Statutory Rights Of The Defendant By Intentionally Holding Both Civil And Numerous Criminal Motions Hearing On The Same Date; Although He Asked To Be Disqualified And Was Requested To Disqualified Himself Nearly Ten Days Before The Hearing But In Attempt To Lure Her Spouse To The Courtroom For A Bench Warrant Issued Against The Spouse Caused A Delay In Ms. Shuler's Trial And Decisions On The Motions.

11.) DID THE TRIAL COURT Violate The Defendant's Right To A Constitutional And Statutory Rights Of The Defendant By Deciding Motions After The Trial Judge Indicated That He Had A Basis To Be And Wanted To Be Disqualified From The

Case, The Defendant Requested By A Motion He Be Disqualified And He In Fact Disqualified Himself From The Case On February 10, 2016 But Still Made Ruling On Motions Filed.

12.)    DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Motion To Dismiss Or In The Alternative Motion To Sanction Filed On February 1, 2016 When The Defendant Established Discovery Abuses And Prosecutorial Conduct But The Court Failed To Follow Precedent And Statutes Which Clearly Demands That The Court Shall Sanction Or Take Action Upon The Denial Of Discovery.

13.)    DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Motion For Bill Of Particulars When The Defendant Alleged That The Incident Report Completely Failed To Specify How The Defendant Committed An Alleged Assault Or The Victim, The Landlord, Had A Basis To Assault The Defendant, Her Spouse And Two Minor Children In Light Of The Residential Landlord And Tenant Act Title –27 Property Section 27-40-210 Or Any Other Basis Whatsoever That An Assault Was Committed Pursuant To The Statute Alleged.

14.)    DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Motion In Limine/ Motion To Suppress When The Defendant Alleged That Any Statements Made By The Herself Where The Product Of A Fourth Amendment Violation And Coerced Due To "Physical And Psychological Restraints" As Well As Lack Of Sleep, Food And Threats Of False Arrest And Separation From Minor Children Ages Seven And Nine Years Of Age; The Defendant Alleged That The Arresting Officer And The Prosecutor Who Are The Same Individuals Illegal Entered The Home The Defendant, Terrorizing Her For Nearly Two Hours By Asserting That He Was Going To Present The Alleged Victims False Statements To A Magistrate To Seek The Defendant's Arrest And Attempting To Scare And Intimidate The Defendant Into Leaving A Home That She Resided With Her Spouse, Two Minor Children And Had A Valid Lease To Reside At.

15.)    DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request To Request Any Statements Made By Herself Or The Alleged Victim When The Arresting Officer Repeatedly Interrogated The Defendant Coercing Statements Knowing The Defendant Repeatedly Asked To Be Left Alone, Did Not Wish To Speak With The Arresting Officer And Even Stated That She Would Not Speak With Anyone At All From Orangeburg Without The Assistance Of Counsel.

16.)    DID THE TRIAL COURT VIOLATE ANY RIGHTS OF THE Defendant When He Failed To Immediately Sua Sponte Disqualify Himself From The Case On January 12, 2016 When He Stated There Was A Basis For Disqualification And Announce Next To The Clerk Ms. Sumpter That Ms. Shuler Could Pick Any Judge In Orangeburg To Handle The Case; On February 10, 2016 Judge Daily Denied

Making Such Statement While On The Bench; However Ms. Shuler On Or About January 28, 2016 Put Judge Daily On The Speaker Phone For Her Spouse And Two Minor Children To Hear Judge Daily's Statements – Judge Daily Stated That He Was No Longer On Ms. Shuler's Criminal Case.

17.)   DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Motion Filed On February 24, 2016 Requesting A Copy Of The Instant Criminal File And A Relevant Civil Case Where The Alleged Victim Filed A Complaint For Ejectment Against The Defendant Two Days After The Arrest Alleging Relevant Facts?

18.)   DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request For An Order To Compel Discovery Pursuant To Rule 5, Which A Request Was Timely Made, Brady V. Maryland And The Due Process Clause, Filed On March 3, 2016.

19.)   DID THE TRIAL COURT Violate The DEFENDANTS' Statutory Rights By Failing To Make A Finding On The Record As To The Reason For And The Circumstances Surrounding The Non-Compliance And The Determination Of The Proper Sanction Pursuant To Statute When The State Repeatedly Failed To Comply With The Defendant's Discovery Pursuant To Rule 5, Which A Request Was Timely Made, Brady V. Maryland And The Due Process Clause.

20.)   DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request For The Re-Examination Of The Jury Selection Procedures Because Of The Elimination Of Young, Black Females From The Jury Panel.

21.)   DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request For The State To Assert That The Prosecuting Officer Articulate A Non-Discriminatory, Race-Neutral Reason, Rationally Related To The Outcome Of The Trial, For Striking Each Of The Juror In Question.

22.)   DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request For A Continuance When The Defendant Argued That She Was Unprepared For The Batson Hearing Because She Was Denied The Recording Of The Hearing And The Documents In The File To Present Her Arguments.

23.)   DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request For Continuance Of The Batson Hearing By Asserting That The Reason The Defendant Was Unprepared Was That She Failed Obtain Document She Could Get And The Writ Of Mandaumus Was Granted By The Higher Court And The Defendant Was Informed Of This; However The Statements Were Entirely False And The Defendant Also Asserted That Even If Given The Information Two Days Before A Hearing Would Not Have Been Sufficient Time To Prepare For The Hearing.

24.)    DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request For A Continuance Of The Batson Hearing On The Basis Of Cost When The Defendant Suffered Monetary Damages Herself Due To The False Prosecution And Lost Was Much Greater Than The State Given The Fact That Due To The False Prosecution She Became Jobless And Homeless With Two Minor Children To Provide For.

25.)    DID THE TRIAL COURT PROPERLY DENY DEFENDANTS' Request To Decided Post Trial Motions Filed On April 14, 2016, A 1.) Motion For New Trial Or To Re-Open, 2.) Motion For New Trial Based On New Evidence And Prosecutorial Misconduct, 3.) Motion For Disqualification/Recusal And Additional Motions On April 25, 2016 1.) Motion To Dismiss, 2.) Motion For Disqualification Of Witnesses And 3.) Motion To Quash.

26.)    DID THE TRIAL COURT PROPERLY WAIVE THE DEFENDANTS' RIGHT TO HAVE A JURY Tried By A Six PERSON Jury?

27.)    DID THE TRIAL COURT PROPERLY WAIVE THE DEFENDANTS' RIGHT To Be Present In Trial When The Trial Judge's Held A Trial In The Defendant's Absence Knowing That Defendant Contested The Proceeding And The Court Failed To Make Any Finding Whatsoever That The Absence Was Voluntary; And Did Not Even Attempt Take Basis Steps Of Calling The Defendant By Telephone, Send An Email Which The Court Previously Done Or Even The Defendant's Spouse To Ascertain The Basis Of The Absence And Also Failed To Answer Its Own Telephone Which Does Not Even Have A Voicemail When The Defendant Attempt To Explain Her Tardiness; The Trial Judge Alleged That Ms. Shuler Never Contacted The Courtroom; However In Ms. Shuler's Motion For A New Trial She Produced A Photograph Of Her Cellular Call Records Showing Calls Made To Both The Holly Hill Magistrate's Court And The Chief Judge Dash Officer To Make Sure She Was Dialing The Correct Number Of The Holly Hill Magistrate's Office Because No One Was Answering The Telephone.

28.)    DID THE TRIAL COURT PROPERLY WAIVE THE DEFENDANTS' RIGHT When He Tried In Absentia When She Was Running Late To The Courtroom When The Judge Or Any Other Person Failed To Called The Defendant Three Time To The Stand Without A Response.

29.)    DID THE TRIAL COURT PROPERLY WAIVE THE DEFENDANTS' RIGHT When He Tried In Absentia  Without Making A Finding On The Record That The Defendant Was Given Notice The Trial Would Proceed Without Her And She Would Be Tried In Absentia Should She Fail To Appear.

30.)    DID THE TRIAL COURT Violate The Defendant's Constitutional And Statutory Right By Trying The Defendant With A Jury Less Than Six Without An Expressed

Or Voluntary Waiver When The Trial Was Held In Absentia While The Defendant Was Due To No Reason Of Her Own Fault Running Late To The Courtroom.

31.) DID THE TRIAL COURT ERRONEOUSLY ADMITTED INTO EVIDENCE A PHOTOGRAPH BROUGHT TO THE ATTENTION OF THE COURT AS BEING FABRICATED AND ALSO PROVIDED THREE MONTHS AFTER DISCOVERY WAS REQUESTED BY THE DEFENDANT; THE TRIAL Judge Statement In March When The Photograph Was Handed In Open Court That If The State Did Not Timely Prove The Photograph "Why Did The Defendant Take It."

32.) Did The Trial Court Properly Provide The Jury With The Correct Jury Instruction For The Alleged Offense.

33.) Did The Trial Court Properly Instruct The Jury On The Law Which Would Have Included Self-Defense And Other Information Necessary To The Trial Such As Bias Of The Witness And The Prosecutor Who Committed A Number Of Criminal And Civil Violations Against The Defendant During And After The Arrest.

34.) Was The Trial Tainted And Patently Unconstitutional By A Prosecutor WHO COMMITTED A NUMBER OF CRIMINAL AND CIVIL VIOLATIONS AGAINST THE DEFENDANT DURING AND AFTER THE ARREST.

35.) Was The Trial Tainted And Patently Unconstitutional When The Prosecutor Utterly Failed To Fulfill His Duty Of Seeking The Truth By Refusing To Watch A Video Of The Alleged Crime Or Interview Three Independent Witnesses Or Even Call The Three Independent Witnesses To Testify During The Trial.

36.) Was The Trial Tainted And Patently Unconstitutional When The Prosecutor Utterly Failed To Fulfill His Duty Of Seeking The Truth By Challenging The Numerous False Statements Of Its Only Witness, Question Her Mental Competency, And Then Requested That The Trial Court Not Present Over 100 Pages Of Documents The Defendant Intended To Introduce Into Evidence And Also Failed To Introduce Into Evidence The Video Recording Of The Allege Assault.

37.) Was The Trial Tainted And Patently Unconstitutional When The Prosecutor Utterly Failed To Fulfill His Duty Of Seeking The Truth By Failing to Show to the Jury And Admit into Evidence A Video Of The Alleged Crime, Statements of the Three Independent Witnesses, the prior inconsistent statements of the alleged victim or the 911 recording which recorded the alleged assault.

38.) When Officer Clarence Habersham, Justin Infinger and Sergeant Ronald Webb illegally evicted Ms. Shuler from her place of residence by stating that if she did not immediate leave she would be arrested on May 30, 2016. Officer Habersham also forced Ms. Shuler to sign a stay away notice from 5020 Rivers Avenue with the

following special conditions:  Never to Return by threaten to arrest her if she did not; Sergeant Webb was present when the threats of false arrest were made.  Ms. Shuler paid for a full week of the hotel where she resided at but because the owner did not like Ms. Shuler the owner demanded that Ms. Shuler and her children be forced to leave the hotel. Chief Driggers and all supervisors were aware of the police officers conduct but did nothing at all to discipline the officers or remedy the incidents.

39.)    From April of 2016 to November of 2016 the Orangeburg Court system refused to schedule a hearing date for the criminal case then Judge Diane Goodstein attempt to persuade Ms. Shuler that she was only present for the Writ of mandaum appeal because Ms. Shuler never filed an appeal of the criminal case or a Motion for a New Trial.  When Ms. Shuler persisted Goodstein then claimed she as decide what to do later.  Goodstein then called Child Protective Services alleging that she "had concerns" for Ms. Shuler's children because what Ms. Shuler said made no sense. Judge Goodstein running for an election told clerk staff to hold off sending Ms. Shuler her final decision.  A month later, after awaiting a decision, Ms. Shuler called the Orangeburg clerk staff which admitted they failed to timely mail the final order preventing Ms. Shuler right to appeal.  The case as alleged remanded back to the magistrate office but after repeated calls from February of 2017 to September of 2017 the Orangeburg court system failed/refused to schedule a new sentencing hearing.

40.)    Before the new sentencing hearing Ms. Shuler requested, again, appointment of counsel but this was never procedural granted or denied but ignored as clerk Winnifa Clark refused to follow the procedural rules for processing requests for appointment of counsel and again failed to fail Ms. Shuler appeal of the sentencing and sent a letter to Ms. Shuler rejecting the filing on October 5, 2018 alleging that failed to pay a $150.00; this is while Ms. Shuler's motion for acknowledge of indecency was still pending as it was neve procedurally accurately decided and while Ms. Shuler had as of January 5, 2018 a Writ of Mandamus at the South Carolina Supreme court requesting that acknowledgment of indecency is filed.  (Attachment A) Further, Ms. Clark's actions are incompetent and inconsistent with prior rulings on the case as Ms. Shuler was previously allowed to file two prior appeals in the exact case without the required filling fee.

41.)       After the illegal sentencing hearing, Ms. Shuler filed a Motion for a New Trial another motion (which the first two were previously completely ignored by Judge Daily) for recusal of Judge Dash. (Attachment B).  In the Motion for a New trial and Disqualification Ms. Shuler made the argued that the **State violated the her right to due process:  by allowing a self-interested prosecutor to prosecute this case which is a conflict of interest and not compatible with any principles of a judicial system, she requested a trial by a judge with a law degree, refusal of the unlawful conviction due to** the court's incompetency in maintaining control of testimony during the trial resulting in procedural due process violations when the court failed to enforce prior rulings and Judge Daily should have reduced his ruling to writing; specifically since he requested a day after the bond hearing for Ms. Shuler to select another judge and had already recused himself thus should have ensured another judge was aware of the prior ruling, **in addition, Ms. Shuler requested an evidentiary hearing on this motion, as well as**

27

**pre-hearing discovery concerning the full circumstances surrounding the denial of discovery, the court system refused to follow the law in denying Ms. Shuler's Motion for a New Trial Based Prosecutorial Misconduct when Ms. Shuler raised numerous improprieties and misconduct by the State and the prosecutor and the court did not procedural follow the law and rules in commencing a trial in** absentia.     Ms. Shuler also argued that the **The court system refused to follow the law in denying Ms. Shuler's Motion for a New Trial Based Prosecutorial Misconduct when Ms. Shuler raised numerous fundamental violations of her rights. The denial of right to counsel. The denial to change venue. The State has inexcusably failed to comply with discovery contrary to Brady v. Maryland and *The Brady/Giglio Violations Requirements of an Evidentiary Hearing and that the*prosecutor** -- the Government committed several acts of prosecutorial misconduct causing an unfair trial in this case.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

96.     The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-95.

97.     Ms. Shuler signed a lease with Ms. Jenkins in January of 2015 granting Ms. Shuler exclusive use of the premise by her, her spouse and two minor children in exchange for $440.00 a mouth. Ms. Shuler was also responsible for paying for the utilities; the water was included in the utilities. But Ms. Jenkins never left the residence and even moved her mentally disabled daughter into the premise. Yet failed to pay any share of the rent for herself or her daughter despite Ms. Shuler objection to the conduct.

98.     Due to the actions of Ms. Jenkins in making false statements to the police department and supporting the officers suggestion that she evict Ms. Shuler and her children
And her minor children Ms. Shuler and her minor children on the next day, September 23,, left the residence to get away from Carlene Jenkins. When Ms. Shuler and her minor children returned in October to get my property. The Carlene Jenkins damaged Ms. Shuler's property in an amount valued of $1250.00 and scattered the plaintiffs' property throughout the premise. Ms. Jenkins also throughout the two pet turtles the plaintiffs had for over two years.

99.     When the plaintiffs spouse was incarcerated after in October of 2016 Ms. Shuler had no intention of pay his bill for release. However, once the landlord returned due to her false statements and lies, I knew that she would attempt to make false allegations against me. Even though at that point Ms. Shuler did not want her spouse in the residence, she went and got her husband because the Orangeburg police department made prior threats of falsely arresting her and she knew that the landlord would make false allegations to have her falsely arrested.

100.     Orangeburg Sheriff Department regularly enters the plaintiff's residence to harass her for fighting against their refusal to provide law enforcement services to her, a victim of domestic

violence. Yet have time to drive 45 minutes to illegally enter the family home so the landlord could give the mother a notice to quit which Officer Andre Bison did on November 13, 2015. . A notice that had no legally enforceable basis.

101.    On January 9, 2016, Ms. Shuler was working in New Jersey. With the assistance of Calvin Hall, one of Jenkins sons and Deputy Sheriff John Stuke Carlene Jenkins changed the locks to the residence. The change of locks resulting in Ms. Shuler's spouse Melvin Delaney being locked out. Melvin Delaney having no other place to go went to a hotel where he paid $69.00 to stay the night. Due to the domestic violence abuse and the misconduct of the Orangeburg Sheriff department as well as Carlene Jenkins mental issues and abuses Ms. Shuler left the state and intended to relocate with her minor children to permanently reside in New Jersey. Despite being current on rent based on agreements made Carlene Jenkins with the assistance of her son, Calvin Hall and Officer John Stuke changed the locks on the residence Ms. Shuler had a lease for. Then when Ms. Shuler returned to the home without warning Carlene Jenkins initially refused to let Ms. Shuler, her spouse and two minor children in the home. When Ms. Shuler attempted to put one of the  minor children through the window Jenkins opened the door, ran to her room and called 911.   Ms. Shuler believing Jenkins was speaking with Calvin Hall, Jenkins son, came to the door and asked why was she calling Calvin Hall? Carlene Jenkins then picked up an axe swinging it near Shuler, which was also inches from Melvin Delaney Ms. Shuler' spouse and the two minor children. Ms. Shuler then attempted to take the axe from Jenkins but due to a rotator cuff injury was unable. Melvin Delaney then struggled for a minutes to take the axe from Jenkins who was adamant in retaining but Jenkins ultimately could not hold the axe as Melvin Delaney was stronger and Jenkins resistance caused her to fall down. Do, despite the allegation that that Ms. Shuler pushed Jenkins it never occurred, further Ms. Shuler is and was deemed medically incapable of pushing at that time due to the rotator cuff injury/ should injury.  Further, it was the force of Jenkins resistance and Delaney's attempt to remove a deadly weapon that was just swung with inches of Melvin Delaney, Ms.  Shuler, and the two minor children that Jenkins fail. It was due to  Jenkins illegal acts and Delaney's attempt to remove a deadly weapon for Jenkins possession, Jenkins failed down.

102.    On January 9, 2016, Orangeburg Sheriff Department Deputy Sheriffs John Stuke and Michael Lawrence were outside with the landlord.  The landlord called her mentally handicapped adult child who had down syndrome to open the door so Deputy Sheriffs John Stuke and Michael Lawrence could enter the residence. Deputy Sheriffs John Stuke and Michael Lawrence entered the residence.  While Sheriff Deputy.  On January 11, 2016, Ms. Shuler and her minor children were scheduled to move to the state of New Jersey where Ms. Shuler started a job on or about December 13, 2015.  The children were looking forward to starting a new school.  Instead of being able to do this Ms. Shuler and the minor children were first detained in the state of Virginia by Judge Gillum issuing an order that Ms. Shuler could not leave the state due to the false arrested by the Orangeburg Sheriff deputies, then .  The only reason Ms. Shuler came to the state of South Carolina was to obtain her mail and property which included a check she needed to move to a residence in the state of New Jersey that following Monday, January 11, 2018. However, Ms. Shuler had to call in, notifying her employer that she needed time off.  Ms. Shuler

requested Judge Samuel Daily to allow her to leave the state. However, due to the false arrest by Deputy Sheriff John Stuke and Michael Lawrence Ms. Shuler was ordered to stay away from her residence where Jenkins was barricade inside for days. Even when Ms. Shuler attempted to get her husband and minor children to retrieve the property Jenkins called the police department with more false allegations resulting in Orangeburg officers and specifically Officer Michael Lawrence to deny Ms. Shuler and her family the ability to retrieve their property citing the stay away order which did not even include the spouse and children then proclaim that because it was too late at night the Orangeburg Sheriff department would not allow Ms. Shuler assistance to retrieve her property which is the only way she would be able to retrieve her property. The same judge, Judge Samuel Daily who was the judge in the criminal case refuse to order Jenkins to leave the property for a few hours to allow Ms. Shuler and/or the spouse and minor children to get their property without the intervention and/or assistance of the Orangeburg Sheriff's office which was entirely unnecessary and unlawful abuse of power. Before the landlord tenant case which Jenkins filed to victim Ms. Shuler and her family came to conclusion Jenkins with the assistance of her son Calvin Hall throughout Ms. Shuler and her family property without even calling them to retrieve the property or to notify them that their property was outside the residence on the main road; resulting in the lost and/or damage of property in the amount of about $15,000 (this included two computer gaming systems, refrigerator, freezer, 65 inch T.V., a laptop, expensive children clothing and toys, legal books).

103.     In addition to engaging in illegal self- help Carlene Jenkins denied Ms. Shuler access to her property and food causing Ms. Shuler to lose property. Ms. Jenkins failure to leave the property and to bring her adult mentally disabled daughter to the property resulted in an increase in the amount of utilities. Ms. Shuler is requesting the damages for the illegal self-help eviction, lost of her property and share of cost for Ms. Jenkins and her daughter stay at the residence.

## SPECIFIC PERFORMANCE

104. Carlene Jenkins told the plaintiff Melodie Shuler during the first week of January 2015 that if she came to South Carolina she would give her the land on the opposite side of the street of where the mobile home is located on the land. Ms. Shuler was able to practice law and receive substantial income from her work and could have also made money from numerous business enterprises. However, Ms. Shuler not only moved herself but her spouse and two minor children to South Carolina paying all the utilities and the entire mortgage for Carlene Jenkins property were Jenkins signed a lease saying she would not reside there but did resided there and even moved in her adult disable daughter. From January to July Ms. Shuler paid the entire mortgage of $440.00 but after Jenkins and her daughter remained there Ms. Shuler paid $220.00 toward the mortgage. Ms. Shuler also gave Jenkins over $2460.00 to catch up on bills she was behind in. Ms. Shuler did such actions in reliance on the statements that Ms. Shuler would be able to have title to the land on the opposite side of the street. Ms. Jenkins also promised to give title to Ms. Shuler of the land starting where the trees begin the back of the yard after it was discovered that Ms. Jenkins had more land than she originally believed. Ms. Shuler

## SIXTH CAUSE OF ACTION
## COMMON LAW CLAIM OF FALSE IMPRISONMENT/ FALSE ARREST

105.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-95.

106.    The plaintiff alleges violations under the SCTCA against the Orangeburg Sheriff's Department, Officer John Stuke and Officer Michael Lawrence for the unlawful seizure of Melodie Shuler. The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.31. The acts and omissions of Stuke and Lawrence, in arresting plaintiff for a Breach ofPeace and Resisting arrest without probable cause violated her fourth amendment rights to befree from unreasonable seizures. As a direct and proximate cause result of the unreasonable seizure the plaintiff suffered emotional and financial harm.

107.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein.32. The Orangeburg Sheriff's Department is vicariously liable for the acts of Defendant s Stuke and Lawrence acting within the course and scope of their employment. Defendants Stuke and Lawrence intentionally restrained Ms. Shuler's movement without lawful authority constituting the tort off false imprisonment. As a direct and proximate cause result of this illegal detention the plaintiff suffered emotional harm.

108.    While being assaulted and battered by Deputy Sheriffs John Stuke and Michael Lawrence Ms. Shuler asked John Stuke, "Why are you doing this?

109.    Johns Stuke stated that she was under arrest. Ms. Shuler said, "For what"? John Stuke said for, "Assaulting your grandmother." Ms. Shuler responded, "Oh please!"

110.    Ms. Shuler then turned around and sat with her back to the kitchen sink and placed her hands in front of her and told Deputy Sheriffs John Stuke and Michael Lawrence that she had a deformity in elbows and wanted to be handcuffed in the front.

111.    Deputy Sheriffs John Stuke and Michael Lawrence then handcuffed Ms. Shuler in the front. Deputy Sheriffs John Stuke and Michael Lawrence lifted Ms. Shuler off the floor and when Ms. Shuler walked out she saw her husband and two minor children.

112.    Ms. Shuler told her spouse and two minor children to tell Deputy Sheriffs John Stuke and Michael Lawrence that she did not do anything.

113.    Ms. Shuler's spouse and minor children then told Deputy Sheriffs John Stuke and Michael Lawrence that Ms. Shuler did not do anything wrong. Deputy Sheriffs John Stuke and Michael Lawrence then attempted to force Ms. Shuler to walk in water on the land that was flooded. Ms. Shuler refused. Ms. Shuler's husband then told Deputy Sheriffs John Stuke and Michael Lawrence to allow Ms. Shuler to walk on the crates out front of the home so Ms. Shuler would not get wet. Deputy Sheriffs John Stuke and Michael Lawrence then allowed Ms. Shuler to walk on the crates. Deputy Sheriff John Stuke remained at the residence.

114.    Deputy Sheriff Michael Lawrence transported Ms. Shuler to be exchanged with Deputy Sheriff . Ms. Shuler stated to Deputy Sheriff Michael Lawrence that she was injured when he removed her from his vehicle to be placed in another police officer's vehicle to be transported to the Orangeburg County Detention Center.

115.    Orangeburg Sheriff Department Deputy Sheriff John Stuke responded to the scene. John Stuke never asked to view the video recording of the incident and never asked the three independent witnesses what occurred; Ms. Shuler's spouse or the two minor children. Jenkins repeatedly told John Stuke that she wanted him to evict Ms. Shuler, her spouse and two minor children. Stuke repeatedly told Jenkins he had no lawful authority to do so. However, Jenkins changed her story to alleged a basis to falsely arrest Ms. Shuler.

116.    Michael Lawrence begin to shout at Ms. Shuler. Ms. Shuler was cooking dinner for her minor children. Michael Lawrence told Ms. Shuler who was cutting potatoes to put the knife down and stated that he wanted to speak with Ms. Shuler. Ms. Shuler stated that she did not want to speak with anyone and picked up her cellular phone. John Stuke stated that Ms. Shuler was under arrest. Ms. Shuler asked for what? Instead of answering Ms. Shuler both Deputy Sheriffs John Stuke and Michael Lawrence attempted to muffle Ms. Shuler's screams and deny her the ability to further record the encounter by attempting one John Stuke grabbing Ms. Shuler around the neck and placing his arm over her mouth. Micheal Lawrence then snatched Ms. Shuler's cellular phone out of her hand and threw it on the ground cracking the scene and permanently damaging the phone. The deputy Michael Lawrence intentionally threw the cellular phone in a bucket of water to attempt to permanently delete the recoding. Deputy Sheriffs John Stuke and Michael Lawrence.

117.    Ms. Shuler was stripped searched upon arrival at the Orangeburg County Detention Center. While being stripped searched Ms. Shuler was told to pull down her underwear and cough. Ms. Shuler pulled down her underwear and coughed. While incarcerated at the Orangeburg County Detention Center Ms. Shuler was repeatedly handcuff during any movement in the Orangeburg County Detention Center with a heavy iron chain placed upon her wrist which was attached to her ankles.

118.    Ms. Shuler was also denied pen and paper to file appropriate motions in court. Ms. Shuler wanted a copy of the incident report of the arrest on January 9, 2016 and wanted to file a Writ of Habeous Corpus with the Federal Court. On Saturday, January 9, 2016, demanded the ability to have the material to file motion in court. Due to the injuries Ms. Shuler suffered during the assault by Deputy Sheriffs John Stuke and Michael Lawrence Ms. Shuler was unable to write during her detainment. Ms. Shuler was informed by an inmate, not staff that she had to request the ability to contact the court. Ms. Shuler was able to make a request through the another inmate who made the request. Ms. Shuler was informed by staff that the person who fulfill the request was out and would not be in until Monday, January 11, 2016.

119.    On Saturday, January 9, 2016, when Ms. Shuler arrived at the Orangeburg Detention Center she asked when the bond hearing was? Ms. Shuler was told that it would be the following day. Ms. Shuler asked about the right to counsel. The staff was unresponsive.

120.    Ms. Shuler was stripped searched upon arrival at the Orangeburg County Detention Center. While being stripped searched Ms. Shuler was told to pull down her underwear and cough. Ms. Shuler pulled down her underwear and coughed. Ms. Shuler was deeply embarrassed and stripped not of clothing but dignity and still have flashbacks of the humiliating experience that while will last and an everlasting scar in her mind; along with the entire experience she endured at the hands of the Orangeburg Sheriff Department employees and the court system.

121.    Before the arraignment began Ms. Shuler requested a copy of the incident report from the clerk of the court through the Orangeburg Sheriff Deputy. Ms. Shuler's request was denied. The Orangeburg Sheriff Deputy never requested the copy of the incident report from the clerk of the court but replied that they do not give defendants a copy of incident reports. Ms. Shuler also request counsel immediately to represent her down the bond hearing and copy of the incident report from Judge Gillens. Ms. Shuler's requests were denied. Judge Gillens stated that an attorney could not be present immediately and would only be available the next morning! Ms. Shuler was told that she could not get a copy of the incident report and could only request it from the Orangeburg Sheriff's Department. Ms. Shuler requested Judge Gillens to give read the incident report to her in open court. Judge Gillens began to read to the report but when requested by Ms. Shuler to repeat a statement Judge Gillens became disrespectful and stated do you want me to read the report or not? Ms. Shuler could not follow along with the report due to its entirety being false. Ms. Shuler was denied the ability to effectively argue that the charges as asserted where either insufficient or not sufficient to allege that she was a flight risk requiring a bond be posted. Judge Gillens refusal to provide Ms. Shuler with the incident report deprived her of the ability to be able to use the nature of the charges.

## SEVENTH CAUSE OF ACTION
## FOURTH AMENDMENT EXCESSIVE FORCE CLAIM

122.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-121.

123.    The plaintiff Melodie Shuler alleges that on January 9, 2016 Officers John Stuke and Michael Lawrence used  excessive force upon her. On January 9, 2016, Deputy Sheriffs John Stuke and Michael Lawrence assaulted Ms. Shuler by lifting her body and knocking her into a kitchen counter. Ms. Shuler was knocked unconscious and does not recall landing on the floor. Ms. Shuler only next recalls waking up with hearing her child hollering, screaming, and crying. Ms. Shuler do not automatically remember where she was. She looked straight and could see the refrigerator door and then tried to lift her head to see why it felt someone was on her. Ms. Shuler could see Deputy Sheriffs John Stuke and Michael Lawrence. Micheal Lawrence was kneeling on Ms. Shuler's right knee. While John Stuke was hitting Ms. Shuler head down with his arm and also put his forearm in Ms. Shuler neck chocking her, preventing her from breathing. Micheal Lawrence then got up and Ms. Shuler could hear him speaking in the living room saying, "The children don't need to see this."

124.    Deputy Sheriff  then placed Ms. Shuler in his vehicle. While seated in Ms. Shuler's vehicle Deputy Sheriff then bragged to Deputy Sheriff how Ms. Shuler's husband came into the house and that he handle him. Deputy Sheriff Michael Lawrence never mentioned that he pulled

out on Ms. Shuler's minor children. Instead of immediately taking Ms. Shuler to get treated for her injuries Deputy Sheriff took Ms. Shuler to the Orangeburg County Detention Center. Upon arrival Ms. Shuler informed the staff that she was injured. The staff told Sheriff Deputy to take Ms. Shuler to the hospital. Ms. Shuler was taken to Regional Medical Center where her injuries were documented. Ms. Shuler was prescribed. Ms. Shuler was not provided any of the medicine she was prescribed until nearly 12 hours after she was incarcerated at the Orangeburg County Detention Center. The nurse claimed she was never notified when Ms. Shuler first arrived that an inmate was rejected from the Orangeburg County Detention Center due to injuries and never informed of Ms. Shuler's injuries when she arrived. The nurse became aware of Ms. Shuler's injuries only after Ms. Shuler repeatedly demanded to be seen by a nurse and provided the medication she was prescribe by the physician at the Regional Medical Center.

125.    When Ms. Shuler was released from the Orangeburg County Detention Center she was in a lot of pain and felt that something was physically wrong. Ms. Shuler made visitations to health care provides within days of the assault upon her by Officers Stuke and Lawrence. Ms. Shuler was informed that her gall bladder was injured and she may need surgery. Ms. Shuler's injuries preventing her from being able to return to work. Ms. Shuler had great difficulty in using the bathroom which caused pain and humiliation. Ms. Shuler right side of her body was damaged and in a lot of pain. Ms. Shuler right arm and hands were scratched and bruised by Officer Lawrence and Stuke and she now has a permanent mark on the top of her right arm.

126.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein

127.    While the Defendant Officer Lawrence is not alleged to have engaged in the hitting and chocking of Ms. Shuler for purposes of Plaintiff's Fourteenth Amendment claim, he as a law enforcement officer who is still liable for an act of excessive force because although  confronted with Officer Stukes's illegal act he possessed the power to prevent it but fail to do so.

## EIGHTH CAUSE OF ACTION.
### COMMON LAW CLAIM OF BATTERY

128.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-127.

129.    The plaintiffs alleges claims of common law battery against Carlene Jenkins.

130.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein. When Ms. Shuler arrived Carlene Jenkins, the landlord, first blocked the entrance to the residence. The landlord then hit and pushed Ms. Shuler repeatedly as she entered the residence. Ms. Shuler repeatedly told the landlord to not touch her. The landlord then said okay and proceeded to dial 911 with hand. Ms. Shuler stated asked what she was calling anyone for that the landlord touch her first. The landlord then says, "You bumped into me!" As Ms. Shuler was speaking with the landlord the landlord ran to her room and returned with pix axe and begin to swing the pick axe around Ms. Shuler and her two minor children and spouse. Ms.

Shuler took the pick axe from Jenkins who refused to let go and tussled. Ms. Shuler then gave the pick axe to her spouse. Ms. Shuler who previously suffered an injury to right side of her body due to a work related injury and prior assault had difficulty in taking the pick axe from Jenkins.

131.   By intentionally hit Ms. Shuler three different times and then attempting to hit Ms. Shuler with an axe by swing it at her while Ms. Shuler's two minor children were able to get to hit with the axe Ms. Jenkins actions constitutes the tort of battery.

132.   The plaintiffs allege a claim for common law assault under the SCTCA against the Orangeburg Sheriff's Department, Officer John Stuke and Officer Michael Lawrence for the physical grabbing Ms. Shuler assaulting her by slamming her on the ground causing her head to hit a kitchen counter, hitting her in the face and chocking her while laying on top of her breast then handcuffing of Ms. Shuler.

133.   Officer Micheal Lawrence assaulted the minor children who were 7 and 9years of age by pointing a weapon at the minor children because they entered the home after hearing their mother being assaulted.

134.   The Orangeburg Sheriff's Department is vicariously liable for the acts of Officer John Stuke and Officer Michael Lawrence  acting within the course and scope of their employment. The acts and

## NINTH CAUSE OF ACTION
### COMMON LAW CLAIM OF FALSE ARREST UNDER THE SCTCA AGAINST THE ORANGEBURG SHERIFF'S DEPARTMENT FOR MELODIE SHULER'S ARREST WITHOUT PROBABLE CAUSE --

135.   The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-134.

136.   Orangeburg Sheriff's Department vicariously liable for the acts of  Officer John Stuke and Officer Michael Lawrence acting within the course and scope of their employment. The acts and omissions of Officer John Stuke and Officer Michael Lawrence intentionally arresting Ms. Shuler without probable cause on a criminal charge constitute the tort of false arrest. As a direct and proximate cause result of these illegal arrests the plaintiff suffered emotional and financial harm.

## TENTH CAUSE OF ACTION
### FIRST AMENDMENT VIOLATIONS – RETAILATORY CONDUCT
### 1983 FIRST AMENDMENT CLAIM AGAINST ORANGEBURG SHERIFF'S DEPARTMENT, OFFICER JOHN STUKE AND OFFICER MICHAEL LAWRENCE FOR ARRESTING MS. SHULER AND FALSELY PROSECUTING HER FOR

**EXERCISING HER FIRST AMENDMENT RIGHT BY VOICING OPPOSITION TO AN UNLAWFUL ARREST as well as Section 1983, 1985, 1988 Violations**

137.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-134.

138.    The plaintiffs argued that the Orangeburg Sheriff's Deputies failed to provide police services to her and the plaintiff minor children resulting in her losing employment with the South Carolina Department of Corrections.  On September 21, 2015, Sheriff Deputy Franklin Ashley Williams told the landlord to evict me because I confronted the landlord about lying in stating that my spouse did nothing to me when the landlord clearly seen me being attacked.  I would have left the state immediately but I was scheduled to do paperwork to start work with the South Carolina Department of Corrections on September 22, 2015.  Franklin Ashley Smith told Carlene Jenkins to evict Ms. Shuler because he disagreed with her speech.  When Ms. Shuler complained about Ms. Jenkins failure to report an allege assault of her mentally disabled daughter.  Franklin Ashley Williams first told Ms. Shuler to not speak to her grandmother that way then told Carlene Jenkins to evict Ms. Shuler and her children from the residence.  The acts and omissions of Officer John Stuke and Officer Michael Lawrence in arresting the plaintiff's for the exercise of speech violated their First Amendment right to the free exercise of speech. The act of Plaintiff Melodie Shuler in filing reports of domestic violence to protect her and her children lead to the Orangeburg County Sheriff's Deputies responding to scene but instead of providing assistance the officer harassed and disrespected Ms. Shuler.  Ms. Shuler was told by Sheriff Deputy Derek Howell that if she called again she would be arrested.  Ms. Shuler landlord was told to evict her if he made a call about her spouse conduct.  Ms. Shuler called the supervisors of the responding officers with the relief.  Ms. Shuler calling about domestic violence and challenging the Officer's responses by complaining to their supervisors are protected under the First Amendment to the United Sates constitution.

139.    Ms. Shuler alleges that Officer Stuke also disagreed with her speech when he arrived on January 9, 2016 because Ms. Shuler objected his entrance into the home she had a lease for, objected to him following her through the premise for over an hour and objected to him repeatedly questioning her when she state she did not want to speak with anyone at the Orangeburg Sheriff's Department.  The exercise of this right was the motivating factor in the arrest of the Ms. Shuler.  Additionally Ms. Shuler act of refusing to speak about the false reports of her grandmother is also protected first amendment conduct because she was compelled to speak by the threat of false statements being presented to a magistrate judge and the refusal to speak was the motivating reason behind her arrest.  As a result of the arrest for exercising their first amendment right to speech and association the plaintiffs were damaged thereby.  Wherefore having fully set forth the grounds of their complaint Plaintiff asks this court to award compensatory and punitive damages in an appropriate amount, attorney fees and costs pursuant to 42 U.S.C. §1988, and such other relief as this court deems just and proper.

140. From January 9, 2016 until the presence the State of South Carolina through have engaged in demanding that Ms. Shuler participate in a criminal proceeding and continue to make

36

notations in court records and their website and/or any other notations despite their lack of jurisdiction because no criminal case was properly commenced. The defendant's, Judge Dian Goodstein, Sylvia Mitcham, Michele Blue later conspired with members of the state of South Carolina child protective services to remove Ms. Shuler's two minor children from her custody and care for no other purpose then because Ms. Shuler is African-American that her complaints about civil rights violations, opposition to being assaulted, disrespected and denied rights under the law by the Orangeburg Sheriff's office were a sign that something was wrong with Ms. Shuler instead of the system.

141. Ms. Shuler demanded an attorney at the first initial state of the improperly commenced criminal case, requested her fees be waived to file an appeal, requested a complete copy of her case file, requested a copy of the alleged victims 911 call, requested a full copy without redactions of the alleged statement of charges, requested a copy of the transcript from the January 4, 2017 appellate argument but was denied the requests even though all of the legal rights Ms. Shuler was entitled. On or about August 20, 2018, Ms. Shuler was coerced by the threat of issuance of a warrant to travel to an illegal sentencing hearing. Despite the fact that no warrant was obtained and no document other than an uniform traffic ticket was used to commenced the proceeding the defendant continue to proceeding with court process as though a criminal proceeding actually exist.

142. On or about August 20, 2018, Judge Derrick first attempted to false detain Ms. Shuler at the Orangeburg court building by alleging that she committed a criminal offense when she stood at the counter and informed her spouse, Melvin Delaney that during the hearing Judge Dash would not allow her to speak and admitted he did not even read her motion for Dismissal based on lack of jurisdiction. Judge Dash then asked LaQuetta Sumpter if Officer John Stuke was still around then Judge Dash ordered LaQuetta Sumpter to call the police department. Ms. Shuler with her children and spouse exited the Orangeburg town complex while Judge Dash chased Ms. Shuler out the clerk's office and the building. Ms. Shuler argues that Judge Dash and Sumter violated her constitutional rights to be free for illegal seizures and her first Amendment rights by attempting to falsely arrest her based on her constitutionally protected speech; criticizing Judge Dash incompetencies while in the clerk's office in a lawful tone and manner.

143. Ms. Shuler alleges **1st Amendment Violation and Retaliation based on exercising First Amendment Rights based on the following:** Ms. Shuler alleges that the illegal acts of defendants was done all for the purpose of denying her civil rights as they believe that because she is an African-American she has no rights they are bound to respect. Even though the court system lack jurisdiction the defendant court employees and the Orangeburg Sheriff's office and its employees continue to demand that Ms. Shuler travel to the state of South Carolina for proceedings, file and send papers to the state to defendant against the lack jurisdiction and have even made reports to the Department of Social Services Child Protection Services knowing full well that the allegations alleged lack merit and not even allegations that fit any definition of jurisdiction under state law.

144. Ms. Shuler alleges that the illegal acts of defendants was done all for the purpose of denying her civil rights as they believe that because she is an African-American she has no rights they are

bound to respect, they know that African-Americans are statistically poor and/or have little disposal income to fight against their systemic failures and/or hire attorneys and they also know that those in power will turn a blind eye to their systemic oppression and that other African-American would not assist Ms. Shuler due to fear.   All of the defendant's  know that African-Americans are statistically poor and/or have little disposal income to fight against their systemic failures and/or hire attorneys and they also know that those in power will turn a blind eye to their systemic oppression and that other African-American would not assist Ms. Shuler due to fear. Whereas 'recusal' normally refers to a judge's decision to stand down voluntarily, 'disqualification' has typically been reserved for situations involving the statutorily or constitutionally mandated removal of a judge upon the request of a moving party or its counsel"). Application of the foregoing principles to the facts of this case demonstrates that none of the grounds petitioners assert required disqualification. They all consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Pp. 15-16.  Bias was not a result of what they learned in earlier proceedings but preconceived notions that governmental employees are always correct, never wrong and that defendants and in this case Ms. Shuler was dishonest.  A did this knowing the history and traditions of dishonest, murdering, raping, stealing governmental employees has systemically oppressed people of Ms. Shuler's race.  Also know specifically that in Orangeburg County where Ms. Shuler's ancestors were enslaved that there is no knowledge of a historical record of Ms. Shuler's family nor her being dishonest individuals.  So to assert that these governmental employees are honest while Ms. Shuler is dishonest contradictions no only history but reality.  Most important the reliance on the position of the parties has no credence to the truth of what occurred.  There is not foundation to rest upon to assert that governmental employees are presumed to be correct and defendant are presumed incorrect or dishonest.  Particularly, disturbing is the fact that a defendant under the law is "presumed innocent" until proven guilty. It is the state that has the burden but through this proceeding the scales of justice have never been balanced. Ms. Shuler's arguments have never been opposed by the prosecutor/arresting officer John Stuke and no opposing party even showed up at the appellate argument yet Judge Daily, Dash and Goodstein repeatedly defended the Orangeburg Sheriff's Office and each other despite the persons never denied and even Stuke admitted he was denied entry to the residence by Shuler on January 9, 2016, and further continued to not simply refused to follow the law and mandate.

145.    Judge Samuel Daily first voluntarily recused himself during the very first Motion in Court when Ms. Shuler walked in requesting permission to leave that state. (after being ordered during the bond hearing to remain in South Carolina despite having new job earning more than $65,000 year and was the sole provider for two minor children.) Judge Daily stated during the hearing that he did not believe Ms. Shuler was assaulted, falsely arrested in the manner she asserted. The hearing was exparte and Ms. Shuler and Judge Daily was the only two in the Court room.  When Ms. Shuler asked Judge Daily if wanted to view a videotape of the assault and false

arrest Daily stated, "No." Then while in the clerk's office Daily told Ms. Shuler in front of clerk LaQuetta Sumpter that he was recusing himself and that Ms. Shuler could pick any Judge in Orangeburg to her the case. Ms. Shuler did not initially file the Motion but after Daily failed to file the motion or provide notice that he had taken the procedure to have a another proceed over the case Ms. Shuler filed a motion for recusal (disqualification) on . During the hearing on the motion Judge Daily denied that he stated he was going to recuse himself. Ms. Shuler stated that the other basis is that Judge Daily during the January 11, 2016 hearing stated without facts, evidence, knowledge of Ms. Shuler and the incident that he did not believe her. Ms. Shuler argued that as a Judge Daily should listen to all of the facts, evidence and that the additional refusal to view the videotapes display a biased against Ms. Shuler because he should have only made a decision about her honesty after all the evidence was presented. Ms. Shuler stated that based off his statements that he felt he should recuse himself and then his actions of forming a conclusion of dishonesty before the completion of evidence and hearing opposing parties' version of events that it appeared that he would not be able to proceed over the matter. Here it was not the case and it is obviously be wrong presume that Ms. Shuler is dishonest because she is African-American based on her standing as a defendant alone and the governmental employees are honest and correct based solely on their job titles and Caucasian and black sell outs who do not realize they are African-Americans also. Biased in favor John Stuke, Michael Lawrence, clerk Laquetta Sumpter, Judge Samuel Daily and Judge Derrick Dash have acted in a racially discriminatory manner against Melodie Shuler. These actions judged by a reasonable objective observer would know that Judge Derrick Dash is which is more than required by the United States Supreme Court standard that he might be. It is no doubt in anyone's mind that the following acts was done with racial animus based on Ms. Shuler race, ethnicity and for no other purpose than to suppress her speech and put her in place which is a state of oppression without no legal authority, rules, regulating, statutes or law to do such acts.

146. In addition to the psychological trauma Ms. Shuler, her spouse and minor children endured as a result of all of the defendant's actions, Ms. Shuler suffered financial lost from an inability to maintain employment due to the defendant's actions and also winning lost from state lottery winnings due to Ms. Shuler's request for the playing of tickets out of state by a person in the state of South Carolina because the South Carolina state Department of child protective services indicated to Ms. Shuler's attorney that if they find her minor children in the state of South Carolina her children would be removed from her custody. Ms. Shuler also suffered financial losses because she is unable to get a license to carry a gun based on the illegal criminal proceeding because Ms. Shuler stalled in retrieving her winnings until she discussed with an attorney her options because in the state of Virginia where she resides an assault conviction as alleged in the illegal criminal proceeding prevents gun permits. Ms. Shuler simply did not feel that it would be safe to travel and live with access to such large sums of money through the lottery win(s) with minor children. Ms. Shuler argues that the she would have been able to make additional lottery wins but for the distractions consisting of the all of the defendant's unlawful actions.

## ELEVENTH CAUSE OF ACTION

# FOURTH AMENDMENT
## INVASION OF PRIVACY, ILLEGAL SEARCH AND SEIZURE

147.    The Plaintiff incorporates by reference all previous allegations of fact and law as if repeated herein 1-146.

148.    The Plaintiff alleges that her Fourth Amendment right to privacy and to be free of illegal search and seizure was violated on numerous dates by Officer Andre Bison, Officer John Stuke and Officer Michael Lawrence.

149.    Carlene Jenkins was out of state from on or about October 21, 2015 to November 11, 2015. Carlene Jenkins popped out of the blue to reside at the residence on November 11, 2015.

150.    The next day, November 12, 2015, the plaintiff six year old, M.T.S.D. bumped into the wall of the room the landlord was staying in.  The landlord confronted the six year old, after being told not to say anything to the children at all by his mother.

151.    Ms. Jenkins stated, "do you want me to call the Sheriff on you?"  The landlord then called the Sheriff Department saying, Ms. Shuler threaten her and someone tried to break into her bedroom.

152.    Sheriff Deputy Andre Brisbon responded to the scene.

153.    The landlord then left the residence.

154.    While Officer Brisbon was at the scene he blocked the exit.

155.    Officer Brisbon also entered the residence without the consent of Melodie Shuler.

156.    Ms. Shuler's spouse needed his blood pressure medicine but exit was blocked by Officer Brisbon. Ms. Shuler  called the Sheriff Department and informed the office that her spouse was attempting  to leave the residence to get his blood pressure medicine but was being blocked by the vehicle Sheriff Deputy Andre Brisbon drove to the scene.

157.    Later the day, Sgt. Thompson called and stated that the landlord needed guardianship over her.  Sergeant Thompson was asked why the Officer entered her residence without the tenants consent?  Sergeant Thompson stated that the Deputy Sheriffs can enter the residence to do a welfare check.  Ms. Shuler informed Sergeant Thompson that when the Brisbon arrived he Jenkins left out the residence to speak with him.  The landlord returned the next day with Sheriff
158.    Deputy Andre Brisbon.  Brisbon again entered the residence over the objection of the tenant to allow the landlord to give Ms. Shuler a copy of a notice to quit.  Ms. Shuler informed Sergeant Thompson of the basis of the entry.  Sergeant Thompson did not have a response to a legitimate basis of this law enforcement person entry.  This was done in front of Ms. Shuler's minor children.

159.    The landlord decides to call the Department because the Orangeburg Sheriff Department by Franklin Ashley Williams previously told her to evict me. She did not have a legal basis to do so and the statement was made because they are incompetent and refused to enforce the law when domestic violence is involved.

160.    On Orangeburg Sheriff Department Deputy Sheriff Officer Andre Bison entered the plaintiff Melodie Shuler's residence without her permission to assist the landlord with given the plaintiff a notice to quit. A notice that had no legally enforceable basis.

161.    On January 9, 2015, Stuke and Jenkins both repeatedly followed Ms. Shuler through the residence demanding that she leave. Ms. Shuler refused. Ms. Shuler stated that she resided there and was fixing dinner for her minor children who ate very little over 14 hours overnight trip.

162.    Orangeburg Sheriff Department Deputy Sheriffs John Stuke and Michael Lawrence were outside with the landlord. The landlord called her mentally handicapped adult child who had down syndrome to open the door so Deputy Sheriffs John Stuke and Michael Lawrence could enter the residence. Deputy Sheriffs John Stuke and Michael Lawrence entered the residence.

163.    On May 31, 20156 Officer Clarence Habersham entered the residence of Ms. Shuler without her permission and told her to leave the residence immediately, even without her property, or she would get arrested. Officer Habersham also forced Ms. Shuler to signed a Trespass Notice by threat of false arrest.

164.    On April 22, 2016, Officer Lawrence Wiggin arrived as Ms. Shuler was leaving her place of residence; the minor children were at school. Ms. Shuler was alone. Officer Wiggins asked Melodie Shuler to identify herself. Ms. Shuler identified herself.

165. Ms. Wiggnes then proceeds to go on and on about Orangeburg and that Ms. Shuler assaulted her grandmother! Ms. Shuler tell Mr. Wiggins that his statements are false. Ms. Wiggins then proceeds to prevent Ms. Shuler from leaving to parking lot by claiming that Ms.

Shuler has a warrant for her arrest. Ms .Shuler was already attempting to make a stop before going to work.

166. Ms. Shuler objected to the conduct of Mr. Wiggins. Mr. Wiggins then stated that Ms. Shuler was about to get arrested for committing disorderly conduct. When Ms. Shuler left the area Mr. Wiggins followed Ms. Shuler from 5020 River Avenue all the way to 3300 Montague in Charleston to Universal Protection Service.

## TWELTH CAUSE OF ACTION
### NEGLIGENCE

167.    Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein 1-166.

168.    The Defendants are liable for their torts in the same manner and to the same extent as a private individual acting under like circumstances.

169.    At all times relevant to the treatment of Plaintiff, the Defendants have acted in a grossly negligent manner by failing to follow statutory requirements relating to the conduct of expulsion proceedings, by failing to provide a fair and impartial hearing officer, by failing to provide minimum and reasonable opportunity to be heard at the criminal hearings and trial, and by continuing to deny the freedom to live peacefully in her home without illegal entry of officers who claimed that Ms. Shuler would be arrested if she did not immediately leave. Even Officer Stuke repeatedly asked Ms. Shuler if she planned on staying the night at the residence and he also assisted Carlene Jenkins in changing the locks to the residence on January 8, 2016 a day before Ms. Shuler and the minor children returned from New Jersey.
The defendant's actions were exercised without any care to the rights of Ms. Shuler or he interests.

170. The Defendants failed to exercise even slight care in ensuring that Plaintiff was treated equally with all other similarly situated person who reported criminal violations committed against them and failed to exercise even slight care in protecting Plaintiff's substantive and procedural due process rights.

170. The Defendants acted in a grossly negligent manner toward Plaintiffs and have Caused them past and ongoing harm.
68. Plaintiff is entitled to actual damages for Defendants' grossly negligent conduct toward him.

## THIRTEENTH CAUSE OF ACTION
## VIOLATION OF ARTICLE 1, § 3 OF THE SOUTH CAROLINA CONSTITUTION

171. Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.
172. Plaintiff has a constitutionally protected property interest in receiving police services and in being treated in an equal and fair manner by these Defendants.
173. At all relevant times, Defendants have acted to deprive Plaintiffs of the police services by conduct that was/is arbitrary, capricious, unlawful and in violation of Plaintiff's due process rights under the South Carolina Constitution.
174. The Defendants lack any good faith basis to deny Plaintiff police services and Defendants were/are acting arbitrarily and on the basis of retaliation against Plaintiff for exercising constitutional and statutory rights. Defendants are also acting on the basis of ill-will and improper motivation against the Plaintiff.
175. The lack of an investigation, request for a warrant and/or any law enforcement action at all against the assailants and denial of any arrest of the assailants denied the Plaintiff due process of the law and failed to provide the Plaintiff with equal treatment compared with similarly situated persons within Orangeburg County, Dorchester County and Charleston County.
176. Defendants' actions have denied the Plaintiff privileges and immunities guaranteed under the South Carolina Constitution, including due process of law and equal protection under the law.

177. Defendants' actions have caused Plaintiff past and ongoing harm and he is entitled to the recovery of actual damages.

## FOURTEENTH CAUSE OF ACTION
### NEGLIGENT SUPERVISION

178. Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

179. Defendant Sheriff Leroy Ravenell, Captain Antonia Turkvant, Chief Kenneth Kinsey, Captain Lacrea Jenkins, Lieutenant Coyler, Sergeant Hunter, Sergeant Thompson and Sergeant Franklin Ashley Williams had during all relevant times overall responsibility for supervising the defendant employees as well as begin employed to make ab input in disciplinary actions.

180. The defendants were required to ensure that any investigation of Plaintiff's complaints was conducted in a fair and competent manner.

181. Acting in a grossly negligent manner, and abdicating even minimal supervisory responsibility, the defendants actions failed to prevent Plaintiff from being subjected to an incompetent, biased, arbitrary and discriminatory investigatory and disciplinary process.

## FIFTHTEENTH CAUSE OF ACTION
### SUPERVISORY LIABILITY

182. Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein.

183. The defendants Defendant Sheriff Leroy Ravenell, Captain Antonia Turkvant, Chief Kenneth Kinsey, Captain Lacrea Jenkins, Lieutenant Coyler, Sergeant Hunter, Sergeant Thompson and Sergeant Franklin Ashley Williams were repeated called by Ms. Shuler from July of 2015 to December of 2017 about the incompetent, biased, arbitrary and discriminatory conduct of several Deputy Sheriffs about the incidents described in all proceeding paragraphs.

184. The defendants exhibited deliberate indifference because they ignored the complaints Ms. Shuler and specifically after her false arrest they ignored at least four witnesses who alleged that Ms. Shuler, her spouse and children were assaulted the alleged victim suffered from demita and causing her to make false statements which she in fact did because she was never assaulted by Ms. Shuler.

185. Antonia "Toni" Turkvant as well as Sheriff Leroy Ravenell were repeatedly spoken to directly about the false arrest of Ms. Shuler was unresponsive and even assisted Officer Stuke in the denial of her rights by not forcing him or making alternative arrangement for Ms. Shuler to get the 911 recording of the alleged assault. Captain Turnvant even repeatedly called Ms. Shuler

186. The supervisor's "continued inaction in the face of documented widespread abuses

187. The supervisors knew of conduct by the defendant Deputy Sheriffs which created pervasive and unreasonable risk of harm to the plaintiffs. The supervisors had knowledge of at

least four incidents in which the Deputy ignored the complaints of failure of Sheriff Deputies to take any law enforcement action against Sheriff Deputies which posed an unreasonable risk of harm to persons who claimed of domestic violence. This resulted in the plaintiffs becoming homeless and a lot of emotional distress, turmoil and suffering as well as loss of income.

188.    Chief Eddie Driggers, Sergeant Ronald Webb, Sergeant Donte of the North Charleston Police Department were all aware of the police officers' actions when immediately following the incidents complained on the same or next Ms. Shuler asked that the wrongful actions of the police officer be corrected. At no time did the supervisors correct the actions of the police officer.

189.    Sylvia Mitchum was aware of the DSS employee's actions when immediately following the incidents complained on the same or next day Ms. Shuler asked that the wrongful actions of the DSS be corrected and that the DSS workers desist from harassing the plaintiffs. At no time did the supervisors correct the actions of the DSS workers; as the harassment begin in June of 2016 and continued on January 6, 2017 when DSS worker Michele Blue visited the minor children at school and then told Ms. Shuler in person on January 9, 2017 that Ms. Shuler was reported as having a mental disorder, was acting erratic and not taking her medication. Ms. Shuler informed Ms. Blue that she did not have a mental disorder but the incompetent worker persisted to ask Ms. Shuler if she was prescribed medication. Traci Alters and Michele Blue both engaged in writing false reports, even provided wrongful procedures to Ms. Shuler indicating that if Ms. Shuler did not sign papers the children would be removed from her custody immediately.

**SIXTEENTH CAUSE OF ACTION**
**CIVIL CONSPIRACY violation of section 1983, 1985, 1988**

190.    Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein 1-189.

191.    Orangeburg Sheriff's Department, Officer John Stuke and Officer Michael Lawrence for arresting Ms. Shuler and falsely prosecuting her for exercising her first amendment right by voicing opposition to an unlawful arrest thus engaged in a civil conspiracy for the purpose of injuring the Plaintiff.

192.    Ms. Shuler was informed that if she called again to report any incidents of domestic violence she would be arrested by Officer Derek Howell.

193.    On September 21. 2016, Officer Franklin Ashley Williams told Ms. Shuler's grandmother to evict her. Although she had no legal basis to do so because he knew his officers were incompetent and he knew that Ms. Shuler planned on contacting the appropriate person to end their abuse of powers. Williams also made fun of Ms. Shuler's speech by saying, "No one is getting blocked up." When Ms. Shuler asked if they were going to lock up her spouse for domestic violence. Ms. Shuler may have said blocked up instead of locked up or he may not have understood her due to a speech impediment. Officer Williams begin to disrespect Ms. Shuler saying how she should speak in her home. When Ms. Shuler pulled out her video recorder Officer Williams and Officer Michael Lawrence ran out the door. Mr. Williams did this

in front of Ms. Shuler's nine year old son. The police department officer continuously failed to take appropriate action about violence and threats of violence against Ms. Shuler but had plenty of time to harass and disrespect Ms. Shuler.

194. On January 9, 2016, Deputy Sheriffs John Stuke and Michael Lawrence falsely arrested Ms. Shuler; after Officer Stuke was in her home for over two hours harassing her and then they both assaulted Ms. Shuler and the minor children as well as Ms. Shuler's spouse.

195. They then filed a false report despite Ms. Shuler have medical records of videos recordings contradicting the false statements. Sheriff Ravenell, Captain Turkvant, Sgt. Hunter and probably everyone who works for that office were aware of the disrespect and assaults the plaintiffs have suffered at the hands of police Officers when Ms. Shuler called to report incidents of domestic violence.

196. Deputy John Stuke and Michael Lawrence of Orangeburg who falsely arrested Ms. Shuler and assaulted her and the minor children as well as her spouse on1/9/2016, continuously falsely persecuted Ms. Shuler in court knowing the allegations were false. On about May 10, 2016 Officer Powell repeatedly threaten to falsely arrest Ms. Shuler in front of the plaintiff, M.T.S.D who was seven year old at the time when Ms. Shuler attempted to get discovery for the crimianl case in which she was falsely arrested and prosecuted despite the defendant knowing the allegations were false.

197. Ms. Shuler also discovered that Officer Andre Brisbon made a false report noting Ms. Shuler was a suspect when she was assaulted by her spouse. Ms. Shuler was repeatedly denied access to public records involving her arrest and also denied requests through criminal procedure documents to use to defend herself and the 911 recording placed by the alleged victim.

198. Captain Turkvant watched the video recording that clearly proves the allegations alleged in the criminal proceeding was false. Captain Turkvant the video tape on or about January 14, 2015; Sgt. Hunter was also in the room with her. My two minor children were also present. Captain Turkvant was very disrespectful saying the tape is not viewable. However, a normal person have other senses like hearing. The video tape clearly contradicts Carlene Jenkins and Officer John Stuke statements in the incident report. Captain Turkvant even lied and pretended to be reading the incident report. When Ms. Shuler told Captain Turkvant that was not was in the incident report. She questioned, "How do you know what is in the incident report?" Ms. Shuler stated, because she asked the Judge to read it in court.

199. Sheriff Ravenell was requested to review the tape and was even present when Ms. Shuler had the video tape but refused to view the videotape. Sheriff Ravenell was emailed a link to the video to watch on the internet and his secretary Ms. Miles was informed that the video tape of the incident where it was alleged that Ms. Jenkins was assaulted was on the interent. Ms. Jeknins was also repeatedly called and informed of all of the constitutional and legal rights that were violated as listed in the proceeding paragraph by the defendants to no avail. Officer Sheriff Ravenell refused to come to the phone and when Captain Turkvant was uncooperative, nasty and rude and even hung up on Ms. Shuler on November 14, 2016 when Ms. Shuler called. Captain Turkvant stated that she was confused about how being false arrested affects a person's life.

200.    As a result of the civil conspiracy engaged in by these Defendants and other Persons which include Carlene Jenkins and Calvin Hall, the Plaintiff suffered special damages, including, but not limited to, damage to his reputation, exposure to criminal arrest and prosecution, possible suspension of license to practice law or disbarment, out of pocket costs for contesting the false criminal proceeding, and losing her job causing her and her minor children to be homeless without out any income.

201.    Plaintiff is entitled to receive actual damages against these Defendants for the harm suffered as a result of Defendants' civil conspiracy.

## SEVENTEENTH CAUSE OF ACTION
## MALICIOUS PROSECUTION

202.    Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein 1-189.

203.    The plaintiff alleges that Officer John Stuke and Officer Michael Lawrence arrested her in absence of probable.

204.    The plaintiff, Ms. Shuler alleges that despite not having probable cause the Orangeburg Sheriff's Department and Officer John Stuke failed to refrain from prosecuting Ms. Shuler for a case for which probable cause did not exist.

205.    Ms. Shuler argues that even if the date of the arrest Officer Stuke was mistaken in believing that the there was probable cause, during the course of the proceeding the prosecuting attorney failed to dismiss the case and even refused to look at the video tape of the incident in which in the alleged victim claimed she was assaulted.

206.    Further, after Ms. Shuler's false arrest, Officer John Stuke never asked Ms. Shuler's children or spouse who were present when the alleged assault took place what happened.  Ms. Shuler also had a video tape and Officer Stuke never looked from my hand but she did post on Youtube and showed his supervisor Captain Turkvant.

## EIGHTEENTH CAUSE OF ACTION
## DEFAMATION

207.    Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein 1-206.

208.    The plaintiff alleged that Carlene Jenkins, Calvin Hall and Officer Powell are liable for defamation when they intentionally and/or recklessly made false and defamatory statements damaging the plaintiff Ms. Shuler's character and career as an attorney.

209.    Ms. Shuler allege that Carlene Jenkins on November 11, 2015 and January 9, 2016 made false statements to the Orangeburg County Sheriff's Department alleging that Ms. Shuler kick

her door down, assaulted her and threaten her. On November 11, 2015 Ms. Jenkins called the police department alleging that plaintiff, M.T.S.D attempted to kick her door down. Ms. Shuler and M.T.S.D never engaged in such conduct.

On or about May 10, 2016 Officer Powell alleged in front of Orangeburg Sheriff's Department employee, plaintiff, M.T.S.D. and other bystanders that Ms. Shuler was a disbarred attorney and that he was about to arrest Ms. Shuler for committing a crime. Ms. Shuler was not a disbarred attorney on that day and she was not committing a crime that day.

210.    The plaintiff alleges that the unknown person made false statements to the DSS alleging that Ms. Shuler was mentally ill, acting erratic and was not taking her medication.

211. Charlotte Livingston reported to the numerous individuals, Melvin Delaney, the plaintiff Melodie Shuler and Officer Justice Jenkins that plaintiff M.T.S.D. slammed a child's head against the wall, intentionally making the false statements  cause damage to M.T.S.D. reputation. This lead to bullying and harassment by other students.


## NINETEENTH CAUSE OF ACTION
## DEFAMATION OF CHARACTER/ LIBEL AND SLANDER


212.    Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein 1-206.

213.    The plaintiff alleged that the Orangeburg Sheriff's Department is liable for defamation when they intentionally and/or recklessly made false and defamatory statements damaging the plaintiff Ms. Shuler's character and career as an attorney by publishing numerous statements on the internet.

214.    On or about May 10, 2016 the Orangeburg Sheriff's Department published on the internet and other documents that Ms. Shuler assaulted Carlene Jenkins on January 9, 2016 intentionally lying by stating that Ms. Shuler committing a crime. Ms. Shuler did not assaulted Carlene Jenkins on January 9, 2016.

215.    I have attached the complaint in regards to the disrespect and threats of false arrest I endure by this Officer Michael Lawrence? There is another Michael Lawrence from Orangeburg listed in the complaint. I included him because the statements alleged by the SLED officer was obtained by the false statements of Orangeburg Deputies.

## EIGHTEENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

216.    Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein 1-215.

217.    The plaintiff alleges that the defendant all committed the tort of negligent infliction of emotional distress claim by engaging in the conduct as described in the proceeding paragraphs. The plaintiff alleges that the defendant negligently engaged in conduct, that is was reasonably foreseeable that such conduct would cause the plaintiffs severe emotional distress; and the conduct did cause the plaintiffs severe emotional distress.

## TWEENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM

218.    Plaintiff incorporates by reference all preceding paragraphs and allegations as if fully set forth herein 1-217. The plaintiff alleges that the defendant all committed the tort of negligent infliction of emotional distress claim by engaging in the proceeding paragraphs. The plaintiff alleges that the defendant negligently engaged in conduct, that is was reasonably foreseeable that such conduct would cause the plaintiffs severe emotional distress; and the conduct did cause the plaintiffs severe emotional distress.

**WHEREFORE**, Plaintiffs respectfully prays for a jury trial of this matter; for attorney's fees and the costs of; Plaintiff demands judgment against Defendants, jointly and severally, as follows: for compensatory damages in the amount of $200 million ($200,000,000); punitive damages in the amount of $2 million ($3,000,000) both pre-judgment and post-judgment interest, such other and further relief as this Court finds just and equitable. Plaintiff also requests injunctive and/or declaratory relief that the actions as alleged supra are declared unconstitutional.

### VERFICATION

I, do solemly, swear under the penalty of perjury that all of the statements I have alleged are true to the best of my knowledge.

Respectfully submitted,

Melodie Shuler
10060 West Broad Street #317
Glen Allen, VA  23060
804-313-7229
Email: melodieshuler@yahoo.com