IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Melodie Shuler, | ) | C/A No. 5:19-1015-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER REGARDING** |
| | ) | **AMENDMENT OF COMPLAINT** |
| State of South Carolina; Sheriff Leroy Ravenell; Captain Antonia Turkvant; Laquetta Sumpter; Samuel Daily; Derrick Dash; Diane Goodstein; Winnifa B. Clark, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, Melodie Shuler, proceeding *pro se*, brings this civil rights action. The Complaint has been filed pursuant to 28 U.S.C. § 1915. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). Having reviewed the Complaint in accordance with applicable law, the court finds this action is subject to summary dismissal if Plaintiff does not amend the Complaint to cure the deficiencies identified herein.

## I. Factual and Procedural Background

This matter arises out of a domestic violence incident in Orangeburg County in which Plaintiff claims that she and her minor children were abused by her ex-husband, but Plaintiff was criminally charged by the Orangeburg County Sheriff's Office. (Compl., ECF No. 3 at 5.) Plaintiff claims that throughout her criminal prosecution, various government actors, including the Sheriff's Office, judges, and court officials, withheld or deprived Plaintiff of documents and information necessary for her defense against the criminal charges.

Plaintiff claims that on January 12, 2016, Magistrate Samuel Daily refused to provide Plaintiff with the name of the court, which prevented Plaintiff from writing a caption for her motion for discovery. (Id. ¶ 80-1, ECF No. 3 at 14.) However, the next day, the clerk of court, LaQuetta Sumpter, told Plaintiff that the case was in the Orangeburg County Magistrate's Court, and Plaintiff was able to put a caption on her motion. (Id.) Plaintiff also claims that during her bond hearing, the magistrate refused to provide Plaintiff with a copy of "any information provided during the bond hearing," including the caption of the case and Plaintiff's "release status." (Id. ¶ 80-2.) Plaintiff indicates that she was informed that the Orangeburg County Sheriff's Office had that information on file. (Id.) Plaintiff attempted to file the motion for discovery in magistrate's court but it was rejected and Plaintiff was told to file the motion with the Orangeburg County Sheriff's Office, which she did on January 15, 2016. (Id. ¶¶ 80-3, 80-4.)

On January 28, 2016, Plaintiff filed a motion to shorten the response time to her discovery request in magistrate's court. (Id. ¶ 80-8, ECF No 3 at 15.) At some point, Magistrate Daily indicated to Plaintiff that he would not rule on Plaintiff's motion until the scheduled trial date, February 10, 2016. (Id.) On January 29, 2016, Plaintiff requested "a copy of the recordings" of an unspecified civil case from the Orangeburg County Magistrate's Court but was told by an unspecified person that she must make the request in writing. (Id. ¶ 80-9, ECF No. 3 at 16.)

Captain Antonia Turkvant of the Orangeburg County Sheriff's Office informed Plaintiff on January 29, 2016 that she would not provide Plaintiff a copy of the 911 call from the alleged victim in Plaintiff's criminal matter. (Id. ¶ 80-11.) On February 1, 2016, Plaintiff filed a motion to dismiss or, in the alternative, to sanction and a motion for bill of particulars based on the Orangeburg County Sheriff's Office's refusal to provide Plaintiff with material pursuant to Brady v. Maryland, 373 U.S.

83 (1963), and South Carolina Rule of Criminal Procedure 5. (Id. ¶¶ 80-12, 80-13.) In the motion to dismiss, Plaintiff claimed that the thirty-two page fax sent to her by the Sheriff's Office was not sufficient. (Id. ¶ 80-12.)

On February 11, 2016, Magistrate Daily denied Plaintiff's request to receive a copy of her criminal case file and the file of an unspecified civil case. (Id. ¶ 80-16.) Plaintiff filed requests for those files again on February 24, 2016, but she never received copies of the files. (Id. ¶ 80-17.)

On March 4, 2016, Plaintiff requested a copy of the "recordings of the jury striking" from the same court for an unspecified case but Sumpter told Plaintiff that she had to make the request through Magistrate Daily. (Id. ¶ 80-10, ECF No. 3 at 16.) On March 21, Magistrate Derrick Dash held a hearing and ruled that Plaintiff could not have a copy of the jury selection list. (Id. ¶ 80-25, ECF No. 3 at 19.) Also in that hearing, Magistrate Dash told Plaintiff that an unspecified higher court issued a writ of mandamus that, presumably, directed that Plaintiff be given a copy of the jury selection list. (Id. ¶¶ 80-25, 80-27.) In a telephone conversation with Magistrate Dash on April 5, 2016, Plaintiff informed Dash that "no orders were issued by the higher court in regards to the Writ of Mandamus" but Dash did not believe Plaintiff, became belligerent with Plaintiff, and threatened to call the police for Plaintiff's "telephone misuse." (Id. ¶ 80-27.)

On April 6, 2016, Magistrate Dash issued a show cause order because Plaintiff did not appear in court on the day of her trial. (Id. ¶ 80-29.) Plaintiff claims that Magistrate Dash knew Plaintiff did not intentionally miss the trial and did not have the financial ability to pay the fine. (Id.) However, Plaintiff also alleges the court system lacks jurisdiction to demand she travel to South Carolina for court proceedings. (Id. ¶ 143, ECF No. 3 at 37.)

Page 3 of 14
PJG

Plaintiff further claims that from April 2016 to November 2016, State Circuit Court Judge Diane Goodstein refused to schedule a hearing date for Plaintiff's appeal of her criminal conviction[1] because Judge Goodstein claimed that Plaintiff never filed an appeal or a motion for a new trial. (Id. ¶ 80-39, ECF No. 3 at 27.) Additionally, Plaintiff claims Judge Goodstein called Child Protective Services to report her concern for Plaintiff's children because Plaintiff "made no sense" in what she said to the court. (Id.) Plaintiff claims Judge Goodstein eventually remanded the case to magistrate's court for resentencing after the clerk's office of the magistrate's court admitted to not mailing the final order, which prevented Plaintiff's ability to appeal. (Id.) However, the magistrate court refused to schedule a new sentencing hearing. (Id.) Plaintiff also claims the Clerk of the Circuit Court, Winnifa B. Clark, "refused to follow procedural rules" by refusing to file Plaintiff's appeal and requests for appointment of counsel based on Plaintiff's failure to pay the filing fees. (Id. ¶ 80-40.)

On August 20, 2018, Plaintiff stood in the clerk's office of an Orangeburg County court building and criticized Magistrate Dash's ruling in front of Dash and Sumpter. (Id. ¶ 142, ECF No. 3 at 37.) Plaintiff claims Magistrate Dash accused Plaintiff of committing a criminal offense, ordered Sumpter to call the police, and "chased" Plaintiff out of the building. (Id.)

Plaintiff filed this action alleging violations of her constitutional rights pursuant to 42 U.S.C. §§ 1983, 1985; violations of the South Carolina Freedom of Information Act ("FOIA") S.C. Code Ann. §§ 30-4-10 et seq.; and state tort claims against the defendants, seeking damages.[2] Plaintiff

---

[1] It is not clear from the Complaint what Plaintiff's charges were, what Plaintiff was ultimately convicted of, or what sentence was given to her by the trial court.

[2] This case was severed from Civil Action No. 5:19-88-MGL-PJG. (ECF No. 1.)

also raises forty-one separate claims of legal error by the magistrate's court and sheriff's office in Plaintiff's criminal proceeding. (Id. ¶ 95, ECF No. 3 at 21-27.) The issues raise, among other things, questions of whether the magistrate's court properly ruled on Plaintiff's pretrial motions; whether the court had jurisdiction; whether the magistrate erred by denying Plaintiff's motion to recuse; whether Plaintiff was denied Brady material; whether the magistrate erred in denying Plaintiff's post-trial motions; whether Plaintiff was denied the right to a speedy trial and a jury trial; and whether evidence was properly admitted. (Id.)

Plaintiff claims the refusal by Defendants Ravenell, Turkvant, Daily, Dash, and Sumpter to provide Plaintiff with information and documents related to Plaintiff's criminal case violated FOIA; the First Amendment, and the Fourteenth Amendment's Due Process Clause. (Id. ¶¶ 78-80, 93-94; ECF No. 3 at 13-21.) Plaintiff also claims that Defendants Dash and Sumpter retaliated against Plaintiff and violated her First Amendment rights by attempting to arrest her for criticizing Dash in the clerk's office of the courthouse. (Id. ¶¶ 142-43, ECF No. 3 at 37.) Additionally, Plaintiff claims Defendants Daily, Dash, and Sumpter have demonstrated bias in the court proceedings and racial animus against Plaintiff because she is African American. (Id. ¶ 145, ECF No. 3 at 39.) Further, Plaintiff claims Defendants Goodstein and Clark violated Plaintiff's right to due process. (Id. ¶ 95-39, ECF No. 3 at 27.)

## II. Discussion

### A. Standard of Review

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint. The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative

PJG

costs of proceeding with the lawsuit. This statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In order to state a claim upon which relief can be granted, the plaintiff must do more than make mere conclusory statements. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

This court is required to liberally construe *pro se* complaints, which are held to a less stringent standard than those drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007); King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

Page 6 of 14

*PJG*

B.   **Analysis**

1. **Sovereign Immunity**

The State of South Carolina was named as a defendant in this case.[3] To the extent Plaintiff seeks damages against the State for purported constitutional violations, including against the individual defendants in their official capacities, or for torts committed by its employees, the State is immune from suit. The Eleventh Amendment bars suits by citizens against non-consenting states brought either in state or federal court. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1 (1890). Such immunity extends to arms of the state, including a state's agencies, instrumentalities, and employees. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984); see also Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (recognizing that "arms of the State" are not "persons" under § 1983, and observing that "[w]e cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"). While sovereign immunity does not bar suit where a state has given consent to be sued, or where Congress abrogates the sovereign immunity of a state, neither of those exceptions applies in the instant case. Congress has not abrogated the states' sovereign immunity under § 1983, see Quern v. Jordan, 440 U. S. 332, 343 (1979), and South

---

[3] It is not clear whether Plaintiff intends to bring claims specifically against the State of South Carolina in this matter. However, Plaintiff raises tort claims against all of the defendants named in the Complaint. Because the named individual defendants in this case are state officials, and because Plaintiff's claims arise out of the official duties of those defendants, the tort claims must be brought against the State of South Carolina pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 et seq. ("SCTCA"), which is the exclusive remedy for any tort committed by an employee of a state government entity within the scope of the employee's official duty. S.C. Code Ann. § 15-78-70(a)-(c).

PJG

Carolina has not consented to suit in federal district court, even under the SCTCA. S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent Plaintiff raises any claims for damages against the State of South Carolina, the State is immune from suit.

### 2. Judicial Immunity

As to Plaintiff claims against South Carolina Magistrates Samuel Daily and Derrick Dash, and South Carolina Circuit Court Judge Diane Goodstein, these defendants are entitled to absolute immunity from suit. It is well settled that judges have absolute immunity from a claim for damages arising out of their judicial actions. See Mireles v. Waco, 502 U.S. 9, 11 (1991) (providing that judges are entitled to absolute immunity from suit, not just the ultimate assessment of damages, for judicial actions taken within their jurisdiction); Chu v. Griffith, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions."); see also Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987) (finding state magistrates are entitled to absolute judicial immunity for act performed in their judicial capacity). Judicial immunity is not pierced by allegations of corruption or bad faith, nor will a judge "be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). Judicial immunity applies to all "judicial acts" taken by judges within the court's subject matter jurisdiction. King v. Myers, 973 F.2d 354, 356-57 (4th Cir. 1992) (citing Stump). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362.

*PJG*

Here, Plaintiff's allegations mostly concern decisions Judges Daily, Dash, and Goodstein made from the bench concerning Plaintiff's criminal charges. Such acts—ruling on Plaintiff's various motions, scheduling hearings and trials, and conducting proceedings from the bench—are judicial in nature because they are normal functions regularly performed by judges in such cases. And, the acts were performed in the defendants' capacities as judicial officers in cases within their respective jurisdictions, see S.C. Code Ann. § 22-3-550 (defining magistrate court jurisdiction in minor criminal matters), § 14-5-340 (providing circuit court jurisdiction over appeals from magistrates' courts), notwithstanding Plaintiff's vague and conclusory allegations that the magistrates lacked jurisdiction to hear Plaintiff's criminal proceeding.[4]

As to Plaintiff's claims based on Defendant Dash's calling the police and chasing Plaintiff out of the courthouse in retaliation for Plaintiff's criticism of him in the clerk's office, precedent supports the application of judicial immunity for Magistrate Dash. Specifically, action taken by judges to provide security and order in the courthouse, including when court is not in session, is a judicial act for which absolute immunity applies. See Huminski v. Corsones, 396 F.3d 53, 78 (2d Cir. 2005) (finding judicial immunity for a judge who issued trespass notices against a litigant who protested the judge's decisions in the litigant's case on the courthouse grounds because there was a nexus between the judge's actions and the judge's decision in the litigant's case); Barrett v. Harrington, 130 F.3d 246, 259-60 (6th Cir. 1997) (finding judicial immunity for judge who alerted prosecutors and law enforcement to the actions of a former litigant whom the judge believed was

---

[4] To the extent Plaintiff asks the court to review the propriety of state court's decision in a criminal proceeding and issue non-monetary relief in that matter, such a claim must be brought by way of a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. See Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

harassing her); Martinez v. Winner, 771 F.2d 424, 435 (10th Cir. 1985) (finding judicial immunity applies to judge who alerted law enforcement and implemented security measures during trial over the judge's suspicion that the plaintiff made threats or intimidated the jury during plaintiff's criminal trial). Plaintiff's claim that Magistrate Dash acted in retaliation is unavailing because allegations of bad faith or maliciousness do no defeat judicial immunity. See Stump, 435 U.S. at 356-57. Accordingly, Plaintiff's claims against Judges Daily, Dash, and Goodstein are barred by judicial immunity.

Plaintiff's claims against the clerks of court, Laquetta Sumpter and Winnifa B. Clark, are also barred by immunity. Absolute judicial immunity has been extended to non-judicial officers, such as clerks of court, "where their duties had an integral relationship with the judicial process." Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000) (citing Eades v. Sterlinske, 810 F.2d 723, 726 (7th Cir. 1987)). The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]' " Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992) (quoting Scruggs v. Moellering, 870 F.2d 376, 377 (7th Cir. 1989)); (limited by Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993), to exclude court reporters); see also Hamilton v. Murray, 648 F. App'x 344, 344-45 (4th Cir. 2016) ("[C]ourt clerks enjoy derivative absolute judicial immunity when they act in obedience to a judicial order or under the court's direction.")

Here, Plaintiff's allegations against Sumpter and Clark concern only the clerks' giving Plaintiff information. None of Plaintiff's allegations asserts that the clerks acted outside of their authority or discretion to deny Plaintiff's rights, again, notwithstanding Plaintiff's vague and

*PJG*

conclusory allegation that Clark refused to follow rule by assessing fees for Plaintiff's filings. To the contrary, Plaintiff's alleges the magistrates denied her requests for documents. Thus, to the extent the clerks denied Plaintiff access to any documents, Plaintiff's own allegations indicate it was pursuant to orders by the court. See Hamilton, 648 F. App'x at 344-45. Accordingly, Sumpter and Clark are entitled to derivative, quasi-judicial immunity from Plaintiff's suit for damages.

### 3. Failure to State a Claim

As to Plaintiff's claims pursuant to 42 U.S.C. § 1983 that Orangeburg County Sheriff Leory Ravenell and Deputy Antonia Turkvant violated Plaintiff's right to due process by failing to provide her with information and documents prior to her trial, Plaintiff fails to state a claim upon which relief can be granted. A legal action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

The United States Supreme Court has held that when a State suppresses evidence favorable to an accused that is material to guilt or punishment, the State violates the defendant's right to due process under the Fourteenth Amendment. Cone v. Bell, 556 U.S. 449, 451 (2009) (citing Brady v. Maryland, 373 U.S. 83 (1963)). To state a claim for a Brady violation under § 1983, the Plaintiff must allege the evidence at issue was favorable to her; the officers suppressed the evidence in bad

faith;[5] and prejudice ensued. Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 396-97 (4th Cir. 2014). Here, Plaintiff provides no allegation that Ravenell or Turkvant suppressed exculpatory evidence. Plaintiff alleges only that they refused to provide her a copy of the 911 call form the victim in her case, and that the documents she did receive from the Orangeburg County Sheriff's Office were not sufficient. Without any allegation that the defendants had exculpatory evidence that they did not provide Plaintiff, the Complaint fails to state a claim of a due process violation upon which relief can be granted.

### 4. Conclusion

Consequently, Plaintiff's Complaint is subject to summary dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) - (iii) for failure to state a claim upon which relief can be granted and because some of the defendants are immune from suit. Plaintiff is hereby granted **twenty-one (21) days** from the date this order is entered (plus three days for mail time) to file an **amended complaint** pursuant to Federal Rule of Civil Procedure 15(a) that corrects the deficiencies identified above.[6] If Plaintiff fails to file an amended complaint that corrects those deficiencies, this action will be recommended for summary dismissal pursuant to 28 U.S.C. § 1915.

---

[5] Where the exculpatory evidence was suppressed by a prosecutor rather than a law enforcement officer, there is no bad faith requirement. See Jean v. Collins, 221 F.3d 656, 660 (4th Cir. 2000) ("Jean II").

[6] Any amended complaint filed by Plaintiff is also subject to further initial review by the court pursuant to 28 U.S.C. § 1915. Further, Plaintiff is reminded that an amended complaint replaces the original complaint and should be complete in itself. See Young v. City of Mount Ranier, 238 F .3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect.") (citation and internal quotation marks omitted); see also 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476 (3d ed. 2017) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified. Once an amended pleading is interposed, the original pleading no longer performs any function in the case . . .").



**IT IS SO ORDERED**.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 31, 2019
Columbia, South Carolina

*Plaintiff's attention is directed to the important WARNING on the following page.*

# IMPORTANT INFORMATION . . . PLEASE READ CAREFULLY

# WARNING TO PRO SE PARTY OR NONPARTY FILERS

ALL DOCUMENTS THAT YOU FILE WITH THE COURT WILL BE AVAILABLE TO THE PUBLIC ON THE INTERNET THROUGH PACER (PUBLIC ACCESS TO COURT ELECTRONIC RECORDS) AND THE COURT'S ELECTRONIC CASE FILING SYSTEM. **CERTAIN *PERSONAL IDENTIFYING INFORMATION* SHOULD NOT BE INCLUDED IN, OR SHOULD BE REMOVED FROM, ALL DOCUMENTS *BEFORE* YOU SUBMIT THE DOCUMENTS TO THE COURT FOR FILING.**

Rule 5.2 of the Federal Rules of Civil Procedure provides for privacy protection of electronic or paper filings made with the court. Rule 5.2 applies to *ALL* documents submitted for filing, including pleadings, exhibits to pleadings, discovery responses, and any other document submitted by any party or nonparty for filing. Unless otherwise ordered by the court, a party or nonparty filer should not put certain types of an individual's personal identifying information in documents submitted for filing to any United States District Court. If it is necessary to file a document that already contains personal identifying information, the personal identifying information should be "**blacked out**" or **redacted** prior to submitting the document to the Clerk of Court for filing. A person filing any document containing their own personal identifying information **waives** the protection of Rule 5.2(a) by filing the information without redaction and not under seal.

1. Personal information protected by Rule 5.2(a):

**(a) Social Security and Taxpayer identification numbers.** If an individual's social security number or a taxpayer identification number must be included in a document, the filer may include only the last four digits of that number.
**(b) Names of Minor Children.** If the involvement of a minor child must be mentioned, the filer may include only the initials of that child.
**(c) Dates of Birth.** If an individual's date of birth must be included in a document, the filer may include only the year of birth.
**(d) Financial Account Numbers.** If financial account numbers are relevant, the filer may include only the last four digits of these numbers.

2. Protection of other sensitive personal information – such as driver's license numbers and alien registration numbers – may be sought under Rule 5.2(d) (filings made under seal) and (e) (protective orders).